EXCELSIOR STEAM POWER COMPANY and Another, Respondents, v. THE COSMOPOLITAN PUBLISHING COMPANY, Appellant.

*Attachment — what debts are subject to — levy upon property incapable of manual delivery — Code of Civil Procedure, § 644 — payment to the sheriff — when no protection to the garnishee — estoppel.*

The debt for which an attachment will lie must be an actually subsisting debt, due or about to become due by efflux of time. If the liability be merely possible, and dependent on a contingency which may never happen, an attachment will not lie.

Where property sought to be attached is incapable of manual delivery the law as to making a levy upon it will be strictly construed; where the levy is made by the service of an attachment and notice upon the person against whom the demand is made, the latter must look solely to the notice to ascertain what property is attached, and base his action thereon; as to the property not specified in the notice, the title is not divested, and the holder thereof remains liable to the owner.

The additional levies referred to in section 644 of the Code of Civil Procedure are repetitions of the original levy, to be made upon subsequently discovered property, and such fresh levies can only be made in the manner provided by law for the original levy.

The payment to a sheriff (who has not made an adequate levy thereon), under a warrant of attachment of a sum of money due from the person paying the same to the defendant in the suit in which the attachment was issued, will not protect the person making such payment; he can only defend himself against his creditor by showing that his debt to his creditor was duly attached.

A promise made by a debtor to pay, to a creditor of a person to whom the former is indebted, the money so due and owing by him, does not create an estoppel against him, in an action in which an attachment has been issued and a levy has been sought to be made, which will prevent his setting up the insufficiency of the levy.

*Semble*, that a garnishee cannot be estopped by admissions made before the attachment is issued.

*Semble*, that if a debtor gives a certificate or makes a distinct representation, on or after the service of an attachment, for the express purpose of influencing the sheriff's action thereunder, to the effect that the property levied upon belonged, or the debt attached was due, to the defendant in the attachment suit, he will be estopped from denying the accuracy of the certificate given or the statement made by him.

FOLLETT, J., dissenting.

APPEAL by the defendant, The Cosmopolitan Publishing Company, from a judgment of the Supreme Court in favor of the plain-

tiffs, entered in the office of the clerk of the county of New York on the 5th day of January, 1894, upon the report of a referee.

The facts are set forth in the dissenting opinion of FOLLETT, J.

*William L. Findley*, for the appellant.

*Harold Swain*, for the respondents.

BARRETT, J.:

The plaintiffs' difficulty in this case is that the particular debt due by the defendant to Brown — to recover which this action was brought — was not attached. The attachment was served on the 14th of July, 1890. At that time there was nothing due by the defendant to Brown for the printing of the August magazine. This latter work was not completed until the 29th of July, 1890, and the defendant's indebtedness therefor did not accrue to Brown until thirty days after the latter date. This the referee expressly finds. He also finds that the defendant has paid to the sheriff all the money in which it was indebted to Brown when the attachment of the plaintiff company was served.

The rule with respect to the attachment of debts is well stated in the American and English Encyclopædia of Law (vol. I, p. 896): " The debt for which an attachment will lie must be an actually subsisting debt, due, or about to become due, by efflux of time. If the liability be merely possible and dependent on a contingency which may never happen, attachment does not lie."

The rule is similarly stated in Drake on Attachment (6th and 7th eds. § 551): " The debt from the garnishee to the defendant, in respect of which it is sought to charge the former, must moreover be absolutely payable, at present or in future, and not dependent on any contingency. If the contract between the parties be of such a nature that it is uncertain and contingent whether anything will ever be due in virtue of it, it will not give rise to such a credit as may be attached ; for that cannot properly be called a debt which is not certainly and at all events payable either at the present or some future period." (See, also, Wade on Attachments, § 17, and Drake [6th ed.], §§ 24, 25, and *Mathot* v. *North River Bank*, 16 N. Y Civ. Proc. Rep. 314.)

The present case is directly within this principle. What was due when the attachment was served has been fully paid to the sheriff. Beyond the sum so paid there was nothing then due or certainly to become due to Brown. Whether anything more would thereafter become due to him depended upon a contingency — namely, the doing by him of certain work. The printing of the magazine was a condition precedent to the defendant's liability. Where property sought to be attached is incapable of manual delivery, the law as to levying is strict. Thus it has been held that where the levy is made by service of attachment and notice upon the person against whom the demand is made the latter must look solely to the notice to ascertain what property is attached and base his action thereon. (*Hayden* v. *National Bank*, 130 N. Y. 146.)

As to property not specified in the notice, the court held that the title was not divested and the holder thereof remained liable to the owner.

In *Anthony* v. *Wood* (96 N. Y. 185) it was said by the Court of Appeals that that court had held, "as to the levy permitted to be made upon choses in action, that the attachment reached and became a lien upon only such debts *as at the time* belonged to the debtor by a legal title, and for the recovery of which he could maintain an action at law."

The learned referee acknowledges the force of the defendant's position, and he concedes (citing *Bills* v. *Nat. Park Bank*, 47 N. Y. Super. Ct. 302) that had another creditor of Brown attached this same debt after the work had been completed and the price earned, such other creditor might well have gained a higher right than that of the plaintiffs. He holds, however, that as no other rights had intervened the defendant could not rely upon the objection.

This latter view cannot well be upheld. If interveners would have superior rights to those of the plaintiffs it could only be because they had attached the debt and the plaintiffs had not.

There is no such thing as lawfully attaching the debt as to one person and not lawfully attaching it as to another. It was either attached or it was not attached. Here it was not attached because there was nothing to attach (beyond the sum which has since been paid to the sheriff) when the levy was made. The statute made ample provision for the attachment of the particular debt in ques-

tion after it became due (Code Civ. Proc. § 644), but the plaintiff did not choose to avail itself of the right given by this section to levy "from time to time and as often as necessary" until its claim was secured. The learned referee is in error in supposing that the commencement of this action was equivalent to a new and additional levy after the maturity of the debt. The additional levies referred to in section 644 are repetitions of the original levy upon subsequently-discovered property, and such fresh levies can only be made in the manner provided by law for the original levy. Payment to the sheriff without an adequate levy would not protect the defendant. He could only defend himself against Brown by showing that the debt was duly attached.

The respondents' contention, that the estoppel which the referee found against the defendant, with regard to its alleged offset, should also be applied to the maturity of the debt itself, is far fetched and without merit. The statements upon which the estoppel was found had no bearing upon the maturity of the debt, but solely upon the offset; that is, upon an offset which might be made against the debt when it did mature. The estoppel did not hasten the maturity of the debt or affect the legal relations of Brown and the defendant with regard to it.

The defendant could not well estop itself into presently owing money to Brown, which the latter might never earn, by statements made to influence the plaintiff's conduct with regard to its rights.

This action, it will be observed, is not upon the promise found by the referee in his fifteenth finding of fact, quoted by Mr. Justice FOLLETT. No such promise is averred in the complaint, nor would the sheriff have been a proper party to an action founded thereon. The present action is strictly statutory. It is brought by the plaintiff in the attachment and the sheriff jointly to reduce to possession what was actually attached. Admit that the defendant, as stated in the sixteenth finding of fact, waived all counterclaims which it then had or might thereafter have as against Brown. The question still is, what was due to Brown — leaving out all question of counterclaims — at the time when the attachment was served? The referee says that the defendant's indebtedness to Brown did not then exceed $1,651.47, and that the latter sum has since been fully paid.

That would seem to dispose at least of this particular action. The

defendant did not give the sheriff a certificate acknowledging an indebtedness to Brown of $2.459.90.   If such a certificate had been given, there would be some ground for the contention that, if the plaintiff in the attachment relied thereon and failed to attach other property (a fact, however, which does not appear), the garnishee should be estopped from denying its accuracy.

Short of such a certificate or of a distinct representation — made upon or after the service of the attachment and for the express purpose of influencing the sheriff's action thereunder — to the effect that the property levied upon belonged, or the debt attached was due, to the defendant, there can be no estoppel as against the actual fact.    It would indeed be a strange rule whereby garnishees were to be estopped by admissions made to creditors of their creditor prior to the issuance of the attachment.    Here the agreement between the plaintiff company and the defendant was made two days before the attachment was issued.    Surely no estoppel was created thereby which could operate upon the attachment proceedings which followed.    Whatever rights the plaintiff company may have acquired under the agreement were independent rights, not rights created by estoppel.    And such independent rights cannot be impressed upon its *status* as attaching creditor of Brown.    Brown was not a party to this independent agreement, and the relations between him and the defendant were not altered thereby.    The defendant is, in fact, still liable to Brown for every penny which was not lawfully attached.

It was one thing for the plaintiff company to proceed against the defendant upon the promise found by the referee, another to proceed against Brown by attachment.    As it chose the latter course it is impossible to hold that the sheriff attached what in point of fact was not due to Brown and what might never become due to him, merely because the garnishee had previously promised such payment to the plaintiff in the attachment.

The referee's error results from a failure to distinguish between the rights secured to the plaintiff company by the defendant's promise to it and the rights which it secured under its attachment against Brown.

The attachment was against Brown alone.    What the plaintiff company secured thereunder, it secured solely in Brown's right, not

in its own. If, therefore, when the attachment was served Brown had no right of action against the present defendant for the sum here claimed, such sum was clearly not attached.

Now, Brown concededly had then no such right of action; none in his own right; none, certainly, in the right of the plaintiff company. For the promise made to the plaintiff company was, if anything, as Mr. Justice FOLLETT well observes, a new and original undertaking founded upon a valuable consideration moving from such company.

Keeping this clearly in mind, we think it apparent that the particular claim here sued on was not attached. For, as we have seen, Brown had no such claim in his own right, and it certainly was not conferred upon him by a new and independent agreement between other parties.

It follows that the judgment should be reversed and a new trial ordered before another referee, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurred.

FOLLETT, J. (dissenting) :

In 1890 the defendant was the proprietor of the *Cosmopolitan* Magazine, which was published monthly, and on the eleventh day of February in that year it entered into a contract with J. Wilson Brown by which it sold to him type for which he agreed to pay $808.43 on the 11th of August, 1890, and by which he also agreed to print and bind several successive monthly issues of said magazine for a price agreed on, the defendant agreeing to pay the amount due for each issue thirty days after it should be delivered by Brown to defendant. The plaintiff leased to ' Brown rooms in which he printed the magazine and power with which to operate the presses. The Gardnier Binding and Mailing Company bound the magazine for Brown, and in June, 1890, he was indebted to that corporation in the sum of $1,916.86. In June Brown absconded, and July 3, 1890, the Gardnier Binding and Mailing Company brought an action in the Superior Court against him to recover $1,916.86, and on the same day attached a debt due from the defendant to Brown. At this date the defendant was indebted to Brown in a considerable sum for work previously performed over all counterclaims. On the

twelfth of July Brown was indebted to plaintiff for rent of rooms and power. On this date the August number of the magazine was on Brown's presses. The plaintiff secured from Brown's books a statement of the accounts between Brown and defendant which showed that defendant was indebted to Brown in the sum of $2,459.90, and presented the statement to defendant. At this time the defendant had the right to eject Brown from the printing office and to refuse to furnish him with power. When the statement was presented to defendant it asserted that it had offsets against the claim of $2,459.90, but agreed that if plaintiff would not dispossess Brown and would furnish power to print the August number of the magazine (then on Brown's presses), it would not set up any counterclaim against the demand of Brown against it as shown by the statement, and amounting to $2,459.90.

The following are two of the findings in respect to the agreement between the litigants, and they are conclusive on the facts, as the record contains none of the evidence :

"XV. That on the 12th day of July, 1891, the defendant promised and agreed with the plaintiff, the Excelsior Steam Power Company, that the defendant would pay the account as presented by Mr. Swain, if said plaintiff would furnish the power and premises so that defendant could get their magazine, which was then on Brown's presses. That the said plaintiff furnished such power, and the defendant got their magazine."

"XVI. That on the 12th day of July, 1891, the defendant, with full knowledge of all the facts and circumstances connected therewith, for a valuable consideration, agreed to waive, and did waive, all counterclaims and set-offs against said Brown, which did then exist or which might thereafter exist in its favor by reason of the business dealings and relations theretofore had between the defendant and said J. Wilson Brown."

July 14, 1890, the plaintiff brought an action in the Supreme Court against Brown to recover its debt, and on that day attached the debt owing by the defendant to Brown, and furnished rooms, and power for the presses, and the August number of defendant's magazine was printed and delivered July 29, 1890, for which the defendant become indebted to Brown in the further sum of $1,415.96, which became due August 28, 1890.

February 18, 1891, the defendant paid to the sheriff $1,651.47, which was $808.43 less than $2,459.90. The $1,651.47 was applied on the prior attachment of the Gardnier Binding and Mailing Company, and the defendant refused to pay the $808.43, but asserted its counterclaim for that amount due for type.

This action was brought to recover the $808.43 and arrearages of interest.

The proposition that an attachment becomes a lien only on property or choses in action in existence when the writ is levied, does not need the support of authority or of argument. A lien by legal process cannot be acquired on nothing. But this proposition does not seem to me to dispose of this case. On July 12, 1890, when the agreement between the litigants was entered into, and on the fourteenth of the same month, when the plaintiff levied its attachment, the defendant was actually indebted to Brown in a considerable sum over and above all counterclaims. This fact is conceded and is established by the findings. An attachable subject existed on which the plaintiff, by its warrant, acquired a legal lien, subject, of course, to the lien acquired by the prior attachment of the Gardnier Binding and Mailing Company. Had the defendant remained silent, it would have had the right to have asserted whatever counterclaims it had as against the attaching creditors. But it did not remain silent. On the contrary, in the language of the finding, it agreed that it would pay the account as presented ($2,459.90) if the plaintiff would furnish the power and premises so that defendant could get its magazine then on Brown's presses. Pursuant to defendant's promise, the plaintiff furnished the premises and the power, and the defendant received its August magazine in time to be issued.

By this contract and the plaintiff's performance of it the defendant is bound and is estopped from asserting as against the plaintiff a counterclaim against the indebtedness as admitted on the twelfth of July. Suppose the plaintiff had found chattels sufficient to pay his claim in defendant's possession, which defendant admitted to be Brown's property, and the plaintiff had attached them, and, it may be, omitted to take other attachable property, indeed the sheriff would have had no right to take more property than was sufficient to satisfy the plaintiff's claim and costs, while in fact the defendant was the owner of part of the chattels seized; in such a case the

defendant would be estopped from proving the truth, that he owned part of the goods. Again, suppose that A. has a claim for $1,000 against B., an absconding debtor, and C. tells A. that he owes B. $1,200, which A. attaches and omits, as he must, to attach other property, C. would be estopped from proving as against A. that, at the time he made the admission, he in fact owed B. only $500, or nothing. The supposed cases are not different in principle from the one at bar. In consideration of the plaintiff's promise to permit the building to be occupied and its power to be used for defendant's benefit, the latter promised not to set up against Brown's claim any counterclaim, and the plaintiff having performed and the defendant having reaped the benefit of performance, it cannot now escape the liability which it assumed. The plaintiff was under no obligation to furnish power and space so that defendant's August magazine could be printed in time for delivery, and the contract entered into July twelfth between the litigants was a new and an original undertaking on the part of both, and founded on a valuable consideration.

The judgment should be affirmed, with costs.

Judgment reversed, new trial ordered before another referee to be appointed by the order herein, with costs to appellant to abide event.

NOTE.— The rest of the cases of this term will be found in the next volume (81) Hun.— [REP.