by the sovereign are strictly construed is applied only to their effect on public rights. So far as the jus privatum is concerned, I see no reason for applying this rule of construction, for even if the grant extended to low-water mark it was, as to the fore shore, subject to the jus publicum. Both Vanderbilt and the commissioners of the land office have construed the grant as extending to low-water mark. The commissioners had power to bound their grant on high-water mark if they considered that Vanderbilt's title there ended. It is inconceivable that they should have intended to reserve the title between the uncertain lines of high and low water marks, for it was useless for public purposes. Their acts amount to a practical delimitation of the boundaries between the lands of Vanderbilt and those of the state. The same practical construction has obtained as to other tracts in the same general location. This construction of the meaning of the term "water side" is also shown by the fact that the fore shore has been assessed and taxed against Vanderbilt and his grantees, and finally by the creation by the state of the village of Edgewater and the inclusion of the land in question within its boundaries. Bechtel v. Village of Edgewater, 45 Hun, 240; chapter 214, p. 441, Laws 1866.

The jus publicum or the right of the public is a right of access to the water for the purpose of navigation, boating, bathing, and fishing. Matter of City of New York, 168 N. Y. 134, 61 N. E. 158, 56 L. R. A. 500. By granting the land under water and authorizing solid filling to the bulkhead, this right, in so far as its exercise requires use of the fore shore, is necessarily extinguished. The land which was the tideway is now a narrow slip of land far inland. It is useless for any of the public purposes included in the jus publicum. This condition has been created by acts of the Legislature and of the commissioners of the land office duly authorized by law. The state, therefore, in the interest of commerce, has extinguished the jus publicum over the land in question, and the title in the plaintiff is not burdened by any public use. It is therefore a marketable title.

In this view of the case, it is not necessary to determine whether the locus in quo embraces any portion of the former tideway. As a matter of fact, the evidence shows that the location of the fore shore as it existed in 1818 or before the land was filled in is no longer possible. Neither is it necessary to consider the statute of limitations.

Judgment for the plaintiff, with costs. Submit findings and decree on or before February 24th.

———————

HEDDEN CONST. CO. v. PROCTOR & GAMBLE CO. et al.

(Supreme Court, Special Term, Richmond County. August, 1908.)

1. MECHANICS' LIENS (§ 108*) — PERSONS ENTITLED — "MATERIALMAN"—"SUB-CONTRACTOR."

A written order for oak flooring, placed with defendant by the general contractor, contained the words, "Charge contract 1,981-C-5," and another order to defendant recited that it covered the furnishing and delivery at the owner's switch of oak flooring for a contract known in the con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tractor's office as "1,981," which was the contract between the general contractor and the owner. Lien Law (Laws 1897, p. 515, c. 418) § 2, defines a "subcontractor" as one who enters into a contract with a contractor for the improvement of real property, and defines a "materialman" as any person other than a contractor who furnishes material for such improvement. *Held*, that defendant was a materialman, and not a subcontractor; the mere knowledge that the material was used by the contractor in the performance of a certain contract being insufficient to make him a subcontractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 108.*

For other definitions, see Words and Phrases, vol. 5, p. 4409; vol. 7, pp. 6704–6705; vol. 8, pp. 7718–7806.]

2. MECHANICS' LIENS (§ 196*) — PRIOR ORDER — LIENS OF MATERIALMEN AND SUBCONTRACTORS.

Lien Law 1885, p. 590, c. 342, § 20, as amended by Laws 1887, p. 522, c. 420, making all persons subcontractors except those contracting with the owner, and directing the payment of the amount due the subcontractors and workmen before payment to contractors, but giving workmen preference over subcontractors, was repealed by Laws 1897, p. 545, c. 419, which enacted Code Civ. Proc. § 3414, providing that, when a laborer or materialman did labor or furnished material for the improvement of property, the amount due shall be paid before any payment is made to contractors or subcontractors. *Held*, that section 3414 gave to materialmen the preference that existed under the repealed statute only in favor of workmen, so that a materialman was entitled to payment of his claim before that of a subcontractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 338; Dec. Dig. § 196.*]

3. MECHANICS' LIENS (§ 308*)—ENFORCEMENT—PROOF—MATTERS TO BE PROVED— PAYMENT OF PRIOR LIENS.

In proceedings to enforce mechanics' liens on property, if liens prior to the claimant's have been paid, evidence of that fact should be presented with the findings.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 308.*]

4. MECHANICS' LIENS (§ 308*)—ENFORCEMENT—EVIDENCE—PAYMENT.

In proceedings to enforce a mechanic's lien, the payment of liens prior to claimant's may be shown by stipulation of counsel, or a certified copy of the order of payment, and evidence of payment thereunder.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 308.*]

5. MECHANICS' LIENS (§ 308*)—PAYMENT—INTEREST—WAIVER.

If the amount due a mechanic's lienor was paid without interest, interest thereon was waived.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 308.*]

6. MECHANICS' LIENS (§ 207*)—WAIVER OF LIEN—EFFECT.

Where one furnishing materials expressly waived the lien in his contract with the principal contractor, no valid mechanic's lien against the property could be acquired by him.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 381; Dec. Dig. § 207.*]

7. MECHANICS' LIENS (§ 161*)—PAYMENT—INTEREST ON DEBT.

Lien Law (Laws 1897, p. 516, c. 418) § 4, limiting a materialman's lien against the owner to the sum earned and unpaid at the time notice of lien is filed and any sum subsequently earned on the contract, and in no case shall the owner be liable to pay, by reason of all the liens created, a sum greater than the part of the contract remaining unpaid when notice of liens is filed, does not relieve the owner from paying interest on a debt due from the contractor, so that a materialman was entitled to interest from the time the contract between the contractor and the owner was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

completed, and, that date not appearing, then from the time the proceedings were begun.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 161.*]

Action by the Hedden Construction Company against the Proctor & Gamble Company and others to establish a mechanic's lien.  Judgment as stated.

Eidlitz & Hulse, for plaintiff.
J. C. Weschler, for defendant S. E. Kellar Lumber Co.
Sullivan & Cromwell, for defendant receivers.

BLACKMAR, J.  The only questions submitted for the decision of the court are the claim of Kellar Lumber Company for a preference as a materialman under section 3414 of the Code, the validity of the lien and claim of Heinicke, Incorporated, the question of interest on the several claims, and costs.  Milliken Bros., the contractors, are insolvent. It is conceded that the amount of $27,486.46 became due under their contract from Proctor & Gamble Company, the owner and the different parties to the action to share in this amount as lienors.  There is not enough to satisfy all the liens, and therefore all the questions above stated, except the validity of the claim of Heinicke, Incorporated, are vital ones for the plaintiff, the last and largest lienor.

The Kellar Lumber Company claims to be a materialman within the statutory definition, and therefore entitled to a preference over the other lienors.  This company furnished to Milliken Bros., the contractors, "oak flooring" of a certain grade, quality, and size, pursuant to two orders therefor made by Milliken Bros. and accepted by the lumber company.  In the written order of January 22, 1907, after certain printed and typewritten matter relating to the price and manner of delivery and certain shipping directions, appear the words, "Charge contract 1,981–C–5."  In the other order, dated August 14, 1906, there appears on the face of the order the following:

"This order supersedes and cancels order No. 8, and covers the furnishing and delivering f. o. b. cars Proctor & Gamble's special switch—oak flooring for a contract known in this office as '1,981.'"

It is conceded that the contract referred to as No. 1,981 is the contract between the general contractor, Milliken Bros., and the owner. The lumber company contends that these orders so given and accepted did not constitute a contract for the "improvement of such real property," but that the contract was one for the furnishing of materials only, and that therefore it is a materialman, and not a subcontractor, within the meaning of section 2 of the lien law (Laws 1897, p. 515, c. 418).  The plaintiff contends that such a contract brought the lumber company within the definition of the term "subcontractor," and that by means of the reference to contract No. 1,981 the portion of that contract relating to "oak flooring" was in effect sublet.

I do not think the contract created by the giving and acceptance of these orders constituted the lumber company a subcontractor.  It was not a contract for the improvement of real property, under which the lumber company obligated itself to complete any portion of the main

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract between the contractor and the owner. The acceptance of the contractual obligations of the lumber company was to make delivery of certain lumber at a certain time and place for a specified price. In my opinion the transaction was simply a sale, and brought the lumber company within the definition of the term "materialman." It is doubtless true that the giving and acceptance of the orders constituted a contract, and it may therefore be said that the lumber company did contract with Milliken Bros., the general contractors; but every sale is the consummation of a contract, express or implied, and if it can be successfully contended that a sale to a contractor makes the seller a subcontractor, on the theory that a sale is a contract, it is difficult to say what state of facts or what transaction would constitute a person a "materialman." The reference in the orders to contract No. 1,981 permits, in my opinion, no legal significance of any character. The mere knowledge that material sold to a contractor is to be used in the performance of a certain contract between the contractor and the owner cannot of itself constitute a subletting. If it could, there might be as many sublettings as there were separate purchasers made by the contractor. It seems to me, therefore, that the lumber company is a materialman and not a subcontractor.

The question is then presented whether, being a materialman, the lumber company is entitled to a preference over the other lienors, who are admittedly subcontractors. I think that under section 3414 of the Code the claim of preference must be allowed. Section 20, c. 342, p. 590, of the Lien Law of 1885, as amended by chapter 420, p. 522, Laws 1887, provided as follows:

"All persons, firms, corporations or associations entitled to liens under the provisions of this act, except those who contracted with the owner, shall be deemed subcontractors, and the court in the judgment shall direct the amount due subcontractors and workmen to be paid out of the proceeds of sales in their order of priority, as herein provided, before any part of such proceeds are paid to the contractors. Persons standing in equal degree as colaborers or various persons furnishing materials shall have priority according to the date of filing their liens, provided, however, that in all cases workmen and laborers working for daily or weekly wages shall have a preference over employés of labor, subcontractors or contractors without reference to the date when such workmen or laborers shall have filed their liens."

This section, under the generic head "subcontractors," created all lienors who are under the present law or designated as subcontractors and materialmen, and the section gave a preference to workmen and laborers over all other lienors, including those now called materialmen. The section quoted was repealed by chapter 419, p. 545, Laws of 1897, which enacted section 3414 of the present Code. It seems to me that this latter section extended to a materialman, as that term is defined in the lien law, the preference that formerly existed in favor of the workman or laborer only. The claim of the Kellar Lumber Company to a preference is allowed, and the Kellar Lumber Company is therefore entitled to prior satisfaction of its claim, amounting to $948.98 and interest from the date of filing the lien.

Among the other lienors it is conceded that the lien of the defendant P. Hart & Sons for $10,488 is prior in point of time and entitled to satisfaction before that of plaintiff. Since the hearing an order was

granted upon consent permitting the payment of this lien. If it has been paid, evidence of that fact should be presented with the findings. The evidence may be in the shape of a stipulation of counsel, or a certified copy of the order, and evidence of payment under it. If the amount of such lien has been paid, interest thereon is waived. The remainder of the fund belongs to the plaintiff under its lien, which is greater than the fund.

The contract of H. R. Heinicke, Incorporated, was made with Milliken Bros. and not with the Proctor & Gamble Company. It is not necessary to pass upon the sufficiency of the notice of this lien under the statute, as the lien is invalid, because expressly waived in the contract with Milliken Bros. Even if valid, it would be of no practical value, for prior liens would absorb the funds.

In my opinion, interest should be awarded against Proctor & Gamble Company from the time Milliken Bros.' contract was finally completed. Section 4 of the lien law (Laws 1897, p. 516, c. 418), cited by counsel, was not intended to absolve the owner from paying interest upon a liquidated and valid debt which is due. It was meant to limit the owner's liability to all lienors to the sum for which he could be made liable under the original contract. This sum includes interest from the date when it is due and payable. It is. my recollection that there was introduced in evidence a certificate showing when the contract was finally completed, but I do not find it among the papers. If this date appears in the evidence, the decree should provide for interest on the sum of $27,486.46 to be computed from such date. If such date does not appear in the evidence, interest may be computed from the time of the beginning of the action.

All the parties to the action may have their disbursements taxed as costs, payable out of the funds. Bills of costs of all to all parties, except Milliken Bros., payable by Milliken Bros. The plaintiff may have judgment for deficiency against Milliken Bros. The defendant Heinicke, Incorporated, may have personal judgment against Miliken Bros., if they desire.

Counsel may present findings and proposed decree on or before the 5th day of September. Settle decree on notice.