---

HERMAN & GRACE v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. February 11, 1909.)

1. MECHANICS' LIENS (§ 113*)—NATURE—PROPERTY SUBJECT TO LIEN.

A mechanic's lien filed by a subcontractor attaches primarily to whatever is due to the contractor when the lien is filed; but if nothing is then due, or the amount due is insufficient to satisy the lien, it attaches to any amount subsequently becoming due under the contract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 148; Dec. Dig. § 113.*]

2. ATTACHMENT (§ 61*)—NATURE OF REMEDY—DEMANDS NOT MATURED.

Money cannot be attached, unless it has become an indebtedness due defendant absolutely at the time of the levy.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 164; Dec. Dig. § 61.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** ATTACHMENT (§ 61*)—RIGHT OF ACTION—ON CONTINGENT LIABILITY.

A building contract provided for the payment of the amount due the contractor in a lump sum after completion of the contract; but, in order to enable the contractor to prosecute the work, 85 per cent. of the value of the work performed was to be paid in installments as the work progressed. *Held*, that the remaining 15 per cent. of the value of the work was not an indebtedness to the contractor which could be attached before the completion of the contract.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 164; Dec. Dig. § 61.*]

**4.** MECHANICS' LIENS (§ 105*) — PERSONS ENTITLED—"SUBCONTRACTOR"—"MATERIALMAN."

Lien Law (Laws 1897, p. 516, c. 418) § 2, defines a "subcontractor" as one who enters into a contract for the improvement of real property with a contractor, and defines a "materialman" as any person other than a contractor who furnishes material for the improvement. *Held*, that one agreeing with contractor to install a system of temperature regulation in a building, involving both the performance of labor and furnishing of materials, was a subcontractor within the statute.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 137; Dec. Dig. § 105.*

For other definitions, see Words and Phrases, vol. 5, p. 4409; vol. 7, pp. 6704, 6705; vol. 8, pp. 7718–7806.]

**5.** MECHANICS' LIENS (§ 108*)—PERSONS ENTITLED—"MATERIALMAN"—"SUBCONTRACTOR."

A company which merely sold steam radiators to the contractors, but performed no work on the building, was a "materialman," and not a "subcontractor," within Lien Law (Laws 1897, p. 516, c. 418) § 2, defining those terms.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 140; Dec. Dig. § 108.*]

**6.** MECHANICS' LIENS (§ 196*) — PRIORITY — LIENS OF MATERIALMEN AND SUBCONTRACTORS.

Lien Law (Laws 1885, p. 590, c. 342) § 20, making all persons subcontractors excepting those contracting with the owner, and directing the payment of the amount due subcontractors and workmen before payment to contractors, but giving the claims of workmen preference over subcontractors, was repealed by Laws 1897, pp. 516, 545, cc. 418, 419, which also added section 3414 to the Code of Civil Procedure, providing that, when a laborer or a materialman does labor or furnishes materials for the improvement of property, the amount due shall be paid before any payment is made to contractors or subcontractors. *Held*, that section 3414 gave to materialmen the preference that existed under the repealed statute only in favor of workmen, so that a materialman was entitled to payment of his claim before that of a subcontractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 338; Dec. Dig. § 196.*]

Appeal from Special Term, New York County.

Action by Herman & Grace against the City of New York, the American Radiator Company, John Williams and another, composing the firm of Williams & Gerstle, Jacob Fleischauer, the Heine Safety Boiler Company, and others. From a judgment for plaintiffs, the defendants named, except the city of New York, appealed. Affirmed as modified.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wm. L. Snyder, for appellant American Radiator Co.

T. Ellett Hodgskin, for appellant Heine Safety Boiler Co.

L. Laflin Kellogg, for appellant Fleischauer.

J. Power Donellan, for respondent Johnson Service Co.

Oliver C. Semple, in pro. per.

SCOTT, J.   In this action to foreclose a mechanic's lien there are several appellants.   Their claims relate to the distribution of a fund in the hands of the comptroller of the city of New York.   On February 5, 1903, the firm of Williams & Gerstle entered into a contract with the board of education of the city of New York and the city of New York for installing heating and ventilating apparatus in a public school for the sum of $23,995.   Williams & Gerstle proceeded with the execution of the contract until February or March, 1905, when they abandoned it.   The city thereupon proceeded to complete the work at the expense of the contractors.   When the work was finally completed there remained unexpended a fund of $6,049.25 applicable to the payment of lienors and others who might be able to establish claims thereto.

Prior to the abandonment of the work by the contractors, and on April 9, 1904, the plaintiffs had filed a lien for $2,200.   The regularity, validity, and priority of this lien are not questioned.   On June 4, 1904, the defendant Heine Safety Boiler Company, which had commenced an action against Williams & Gerstle, for $6,650 damages for the breach of a contract not connected in any way with the work in question, sued out a warrant of attachment, and caused it to be served upon the comptroller, together with a notice that it was thereby intended to levy upon all moneys then due or to become due to said Williams & Gerstle.   On June 27, 1904, the Johnson Service Company (then known as the Johnson Temperature Regulating Company) filed a lien for $3,090, and on July 9, 1904, the American Radiator Company filed a lien for $1,007.02.   Other liens were filed, which, for the purposes of this appeal, do not require consideration, since the claimants under them have not appealed.

The judgment appealed from awards the plaintiffs, the Johnson Service Company and the American Radiator Company, the full amounts for which they filed liens, thus exhausting the fund applicable to the payment of liens.   As to the claim of the attaching creditor, the Heine Safety Boiler Company, it is found that on June 1, 1904, the date of the levy of the attachment, there was no claim in existence in behalf of Williams & Gerstle against the city upon which a valid levy could be made.   The facts, so far as they bear upon the finding, are as follows:

On January 26, 1904, before any lien or attachment had been filed or served, work had been done by the contractors of the estimated value of $2,549.25, which was retained by the city under the clause in the contract which permitted it to retain, until the full completion of the contract, 15 per cent. of the amounts earned by the contractors. On May 4, 1904, after the filing of plaintiff's lien, but before the service of the Heine Safety Boiler Company's attachment, there had been certified as having been earned by the contractors $2,390, of which

85 per cent., or $1,997.50, was presently payable; the balance being retained to await the completion of the contract.

A mechanic's lien attaches primarily to whatever may be due to the contractor when the lien is filed. If nothing is then due, or if the amount due is insufficient to meet the lien, it attaches to any amount which may subsequently become due under the contract. Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017. An attachment, on the other hand, applies only to an amount which has become an indebtedness to the defendant, whose property was attached, at the time of the levy, and not to an indebtedness which may accrue after the levy of the attachment. As has been said, there had been earned and was presently payable under the terms of the contract, when the attachment was levied, $1,997.50, and in addition thereto work had been done to the estimated value of $2,549.25, which, however, was not payable until after, the completion of the contract. The question is whether this latter sum constituted, at the time, a present, attachable indebtedness from the city to Williams & Gerstle. The contract, as has been said, provided for the payment of a lump sum; the clause relating to such payment reading as follows:

"That if the contractor shall well and faithfully perform and fulfill this contract, and keep every covenant on his part herein contained, the party of the first part will then, but not before, pay to the contractor the sum of twenty-three thousand nine hundred and ninety-five dollars ($23,995). In order to enable the contractor to prosecute the work advantageously, the said sum or amount shall be paid in installments as the work progresses, as follows, viz.: In installments of eighty-five per centum (85 per cent.) of the value of the work performed upon application made in writing to the superintendent by the contractor, together with an accurate schedule in detail of the materials furnished and work done since the last preceding payment. The final payment of the balance due and unpaid under the contract, including the fifteen per cent. (15 per cent.) of the total amount of the contract price, shall be payable thirty days after the contract is fully performed, completed, and the entire work accepted, and when the work is all complete, as herein provided, and the keys delivered to the superintendent of school buildings."

Reading this whole clause together, it will be seen that we have the case of a contract for a lump sum, no part of which is to become due or payable until the completion of the contract, except that a percentage of the amount earned from time to time is to be advanced "in order to enable the contractor to prosecute the work advantageously." If nothing had been said about the advancements as the work progressed, it would be quite clear that nothing would be due to the contractor until the completion of the contract. The fact that 85 per cent. of the apparent estimated value of the work done was to be advanced from time to time did not affect the percentage as to which no such agreement for prepayment was included in the contract. So much of the contract price was to become earned and payable—in other words, to become a debt from the city to the contractor—only when the contract had been completely finished. It was not therefore a debt, or, in the language of the Code, a chose in action, when the attachment was levied, because it had not then become due, and would not become due until the completion of the contract. It is well settled that an indebedness is not attachable unless it is absolutely payable at present, or in the future and not dependable upon any contingency. Drake on Attachments (6th and

7th Eds.) § 551. It was said in Anthony v. Wood, 96 N. Y. 180–185, as to the levy of an attachment permitted to be made upon choses in action, that the attachment reached and became a lien upon only such debts as at the time belonged to the debtor by a legal title, and for the recovery of which he could maintain an action at law.

We think it plain that in the case of an entire contract for a lump sum there cannot be said to be any debt belonging to the contractor while the contract remains uncompleted. As has already been pointed out, the provision for advance payments operated only to accelerate the payment of so much of the contract price, and was in the nature of a concession by the city of its strict legal right to withhold the whole contract price until the full completion of the work, but did not serve to advance the time when the balance of the contract price, as to which no special agreement was made, would become in any proper sense an amount due to the contractor. Whether it would ever become a debt depended upon the contingencies that the contractors would complete their work, and, if they did not so complete, whether the city would elect to forfeit the contract, or would proceed to complete it at the contractor's expense. We are constrained to hold, therefore, that as to the retained 15 per cent. of the estimated value of the work done there was no indebtedness, at the time of the levy of the attachment, from the city to Williams & Gerstle, except the sum of $1,997.50, being the 85 per cent. payable under the contract, and this was more than covered by the lien filed before the levy of the attachment. There was, therefore, nothing to which the levy could apply.

We have not overlooked the case of Excelsior Company v. Cosmopolitan Company, 80 Hun, 592, 30 N. Y. Supp. 557, in which the Court of Appeals adopted the dissenting opinion of Follet, J., at the General Term (154 N. Y. 772, 49 N. E. 1096), or Edison El. Ill. Co. v. Gustavino Fireproof Co., 16 App. Div. 350, 44 N. Y. Supp. 1026. In the former case the decision turned upon an agreement by the defendant, for a sufficient consideration, not to assert any offsets or counterclaims against a conceded indebtedness in favor of the attachment debtor. In the latter case, as appears from the prevailing opinion, the contract was so drawn that the contractor earned a fixed sum for each square foot of tile arches erected as the work progressed. The person with whom he contracted, therefore, became indebted to him for the stipulated price as each square foot was completed. We think that the learned court below was right in holding that the appellant Heine Safety Boiler Company took nothing by its attachment.

A different question is raised by the appeal of the American Radiator Company, whose lien was filed after that of the Johnson Service Company. The contract of the latter company was to install its system of temperature regulation in the school building, a contract which involved the performance of labor, as well as the furnishing of materials. The American Radiator Company sold steam radiators to the contractors, but performed no work on the building. The claim of the American Radiator Company is that it is entitled as a materialman to a preference over all subcontractors, irrespective of any question as to priority in filing liens. Section 2 of the lien law (chapter 418, p.

516, Laws 1897) defines the several terms used in that act. Under it the term "subcontractor" is defined to mean:

"A person who enters into a contract for the improvement of such real property with a contractor or with a person who has contracted with or through such contractor for the performance of his contract or any part thereof."

A "materialman" is defined as:

"Any person, other than a contractor, who furnishes material for such improvement."

Under these definitions it is clear that the Johnson Temperature Regulating Company was a subcontractor and the American Radiator Company was a materialman. By chapter 419, p. 545, Laws of 1897, certain sections relating to liens and the enforcement thereof were added to the Code of Civil Procedure, and it was provided that they were to be construed with reference to article 1 of the lien law, which was comprised in chapter 418, p. 516, Laws of 1897. By these two acts all of the sections of the general lien law of 1885 (Laws 1885, p. 585, c. 342) were repealed. By section 20 of the last-mentioned act all persons, firms, corporations, or associations entitled to liens, except those who contracted with the owner, were classed together and denominated "subcontractors," thus classing laborers, subcontractors, and materialmen together. After providing for the payment of liens according to priority in filing liens, the section provided that:

"In all cases workmen and laborers working for daily or weekly wages shall have a preference over employers of labor, subcontractors, without reference to the date such workmen or laborers shall have filed their liens."

This section was repealed by chapter 419, p. 549, Laws 1897, which enacted the present section 3414, Code of Civil Procedure, which reads as follows:

"When a laborer or a materialman shall perform labor or furnish materials for an improvement of real property for which he is entitled to a mechanic's lien, the amount due to him shall be paid out of the proceeds of the sale of such property under any judgment rendered pursuant to this title, in the order of priority of his lien, before any part of such proceeds is paid to a contractor or subcontractor. If several notices of lien are filed for the same claim, as where the contractor has filed a notice of lien for the services of his workmen, and the workmen have also filed notices of lien, the judgment shall provide for but one payment of the claim which shall be paid to the parties entitled thereto in the order of priority. Payment voluntarily made upon any claim filed as a lien shall not impair or diminish the lien of any person except the person to whom the payment was made."

The plain meaning of this section appears to be that materialmen are now included in the favored class, which formerly comprised laborers alone, and are awarded a preference over other lienors, irrespective of the date of the filing of the liens. See Hedden Const. Co. v. Proctor & Gamble Co. (N. Y. Law Journal, Sept. 11, 1908) 114 N. Y. Supp. 1103. It would be idle to speculate upon the reasons for or the justice of this distinction. It is sufficient that the Legislature has so decreed in plain terms. All of the lienors in this case dealt directly with the principal contractors, and in that regard stand upon an equality. If the materialman had based his claim upon materials delivered to a subcontractor, its recovery would, of course, have been

limited to the amount due to that subcontractor; but no such question is here presented.

The judgment must therefore be so modified as to award the American Radiator Company a preference over the Johnson Service Company, and, as so modified, will be affirmed, with costs to the appellant American Radiator Company, payable out of the fund in the hands of the comptroller, before payment therefrom to the Johnson Service Company.

INGRAHAM, LAUGHLIN, and CLARKE, JJ., concur. PATTERSON, P. J., not voting.