■ WALTER A. DORN, Respondent, v. ARTHUR A. JOHNSON CORP. et al., Appellants, et al., Defendants.— Appeal by certain of the defendants from an order of the Supreme Court at Special Term which granted plaintiff's motion for summary judgment in an action to foreclose a purported mechanic's lien filed in connection with a public improvement, and denied defendants-appellants' motion for summary judgment dismissing the complaint; appeal being taken, also, from the judgment entered on said order. The issue is as to the validity of plaintiff's lien for the price of gravel which he sold, in place on his land, to defendant Servidone Construction Corporation which, in turn, delivered it to the site of the work; the determination of that issue depending on whether Servidone was a subcontractor of the prime contractors or merely their materialman. (See Lien Law, § 2 [Definitions], subd. 9 [Contractor], subd. 10 [Subcontractor], subd. 12 [Materialman].) From Item No. 2EF of the prime contract and from Item 2EC of the State's "Public Works Specifications, January 2, 1951", referred to by the contract and quoted in appellants' brief without objection or contradiction, but not shown to have been before the Special Term it could be found that the prime contractors were obligated to furnish and place "selected fill, not necessarily borrow" to required lines and grades and to "compact the material" at such location; and that, in the case of selected borrow at least, payment would be made for the material as "measured in its original position" and that the "unit price bid [should] include the cost of furnishing all labor, materials and equipment necessary to complete the work". We give no evidentiary effect to the specifications thus cited but deem it proper to refer to the provisions thereof which have been quoted as pointing up the deficiency in the proof necessary to a proper determination and, further, as indicative of the legal issues which might arise upon a complete factual presentation. The prime contractors' agreement with Servidone was in the form of a letter whereby Servidone agreed "to furnish item 2EF for the east abutment" of the bridge, Servidone to "load, transport and dump the material at the top of

the east abutment" and the prime contractors to "spread it as required", the material to "be acceptable to the State Engineers" and to be paid for at the rate of $1.20 per cubic yard "as measured at the borrow pit and paid by the state engineers [*sic*]." The affidavit of Servidone's president, submitted by plaintiff, states that Servidone purchased from plaintiff for 12½ cents per cubic yard the gravel furnished pursuant to the agreement and "delivered the * * * gravel to the job site". Plaintiff's lien would be valid and enforcible only if he furnished the materials in question to the "contractor", which, concededly, he did not, or to the contractor's "subcontractor or legal representative". (Lien Law, § 5; *Wynkoop* v. *People*, 1 A D 2d 620, affd. 4 N Y 2d 892.) Servidone was such a "subcontractor" only if it entered into "a contract with a contractor and/or with a subcontractor for * * * such public improvement or with a person who has contracted with or through such contractor for the performance of his contract or any part thereof." (Lien Law, § 2, subd. 10.) Obviously, the mere existence of a contract, written or oral, express or implied, does not constitute a supplier a subcontractor and thus obliterate all distinction between subcontractor and materialman. Generally, a subcontractor is regarded as one who assumes performance of some part of the contract, so that labor or other service, and not merely the furnishing of materials, is involved. (See *Lamson Co.* v. *Central N. Y. Regional Market Auth.*, 258 App. Div. 851, affd. 283 N. Y. 703; *Herrmann & Grace* v. *City of New York*, 130 App. Div. 531, 536, affd. on opinion below 199 N. Y. 600; *Buhler Co.* v. *New York Dock Co.*, 170 App. Div. 486; *Hedden Constr. Co.* v. *Proctor & Gamble Co.*, 62 Misc 129, mod. 134 App. Div. 244; and cf. *MacEvoy Co.* v. *United States*, 322 U. S. 102, 108–109.) That a distinction exists in the case of articles furnished the particular improvement, after being manufactured therefor away from the site, in accordance with special designs, has been suggested (*Pittsburgh Plate Glass Co.* v. *Vanderbilt*, 143 N. Y. S. 609) and has subsequently been denied (*Chambers* v. *Vassar's Sons & Co.*, 81 Misc. 562, 566–567). (See, also, *Basich Bros. Constr. Co.* v. *United States*, 159 F. 2d 182, *contra, Northwest Roads Co.* v. *Clyde Equip. Co.*, 79 F. 2d 771; cf. 141 A. L. R. 319, 339.) In the case before us, Servidone's agreement "to furnish item 2EF [of the prime contract] for the east abutment" of the bridge might appear at first glance to undertake performance of some part of the prime contract, but the effect of this is or may be qualified by the language which follows. As to this there exists a triable issue, requiring proof and the consideration of all the contract documents in complete context to determine to what extent, if any, Servidone's agreement to "transport and dump the material at the top of the east abutment" may have contemplated work upon the site which would otherwise have to be undertaken by the prime contractors in direct performance of their contract. The papers before us suggest additional factual issues arising upon plaintiff's contention that some of Servidone's work away from the site — such as excavation, processing the material to contract specifications, submission thereof for the engineers' approval and the measurement thereof in its original position, for payment — was actually work under and in performance of the prime contract, payment for which was included in the unit contract price. Judgment and order reversed, on the law and the facts, and motion denied, without costs. Bergan, P. J., Gibson, Herlihy, Reynolds and Taylor, JJ., concur.