(81 Misc. Rep. 562.)

CHAMBERS v. GEORGE VASSAR'S SONS & CO., Inc., et al.

(Supreme Court, Special Term, New York County.   July, 1913.)

1. MECHANICS' LIENS (§ 132*)—NOTICE OF LIEN—TIME FOR FILING.

Under Lien Law (Consol. Laws 1909, c. 33) § 10, providing that notice of lien may be filed at any time during the progress of the work or within 90 days after the completion of the contract or the final furnishing of the materials, a materialman' may secure a lien for the balance .due for all materials furnished by filing a notice within 90 days of the time the last item was furnished.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190, 192–207;  Dec. Dig. § 132.*]

2. MECHANICS' LIENS (§ 83*)—MATERIALS FURNISHED—"MATERIALMAN."

Under Lien Law (Consol. Laws 1909, c. 33) § 2, defining a materialman as any person other than a contractor who furnishes materials for such improvement, one who furnishes material for the construction of a building but does not perform any work in putting it in place is a materialman, even though the materials were specially made by him for that building after he received the order therefor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 115; Dec. Dig. § 83.*

For other definitions, see Words and Phrases, vol. 5, p. 4409;  vol. 8, p. 7718.]

3. CORPORATIONS (§ 589*)—CONSOLIDATION—RIGHT OF CONSOLIDATED COMPANY —MECHANICS' LIEN.

A corporation formed by the consolidation of two others pursuant to the Business Corporations Law (Consol. Laws 1909, c. 4) §§ 7 to 10, inclusive, which provide that the consolidated corporation shall succeed to all the rights of the constituent corporations, may claim a mechanics' lien for materials furnished by a constituent corporation prior to consolidation as well as for those furnished by the consolidated corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2354–2360; Dec. Dig. § 589.*]

4. MECHANICS' LIENS (§ 154*)—NOTICE OF LIEN—VERIFICATION—INFORMATION AND BELIEF.

Where all the statements in the notice of a lien are made on information and belief, a verification of the notice which states that the verifier had read the notice and knew the contents thereof and the statements stated to be alleged upon information and belief, and as to those matters he believed it to be true, is a sufficient verification.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 261–267;  Dec. Dig. § 154.*]

5. MECHANICS' LIENS (§ 108*)—PERSONS ENTITLED—MATERIALMEN—DEFAULT BY SUBCONTRACTOR.

Where a subcontractor to install plumbing materials failed, a corporation which originally agreed to furnish the plumbing materials to the subcontractor but which, after his failure, furnished them directly to the principal contractor charging the principal contractor upon its books therefor was a materialman furnishing materials to the contractor;  the latter being primarily liable and not merely the guarantor of the subcontractor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 140, 141;  Dec. Dig. § 108.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. MECHANICS' LIENS (§ 31*)—NATURE OF IMPROVEMENT—FIRE EXTINGUISHING SYSTEM.

    Fire hose and racks attached by screws to the wall as accompaniments to a fire extinguishing system and easily detached are not materials within the Lien Law (Consol. Laws 1909, c. 33).

    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 36; Dec. Dig. § 31.*]

7. INTEREST (§ 19*)—UNASCERTAINED DEBT—BUILDING CONTRACT—EFFECT OF MECHANIC'S LIEN.

    An owner of a building is not liable for interest on the balance due the contractor who has not fully performed his contract and who by reason of liens filed against the building is not in a position to receive payment of the balance.

    [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35–40; Dec. Dig. § 19.*]

    Action by Albert N. Chambers against George Vassar's Sons & Co., Incorporated, and others to foreclose a mechanics' lien. Judgment entered distributing the balance due from the owner to the principal contractor among the lienholders.

    Phillips & Avery, of New York City, for plaintiff.

    Sullivan & Cromwell, of New York City, for defendant Dreicer Realty Co.

    William F. Kimber, of New York City, for defendant Goetchins.

    Sidney G. De Kay, of New York City, for defendant Pittsburg Plate Glass Co.

    Isaac Hyman, of New York City, for defendant Brown.

    Gregg & McGovern, of New York City, for defendant Monarch Metal Mfg. Co.

    Morgan, Morgan & Carr, of New York City, for defendant Post & Powers.

    Robert Godson, of New York City, for defendants J. L. & Michael Keating.

    Albert L. Phillips, of New York City, for defendant Architectural Cornice & Skylight Works, Inc.

    Williams, Folsom & Strouse, of New York City, for defendant Kemlein & Leahy, Inc.

    Henry L. Brant, of New York City, for defendant Otis Elevator Co.

    Frederick Klein, of New York City, for defendant Sykes Co.

    Weschler & Rothschild, of New York City, for defendant Seus.

    Joab H. Banton, of New York City, for defendant John Jordis Iron Works.

    Wilbur F. Earp, of New York City, for defendant Hull, Grippen & Co.

    William F. Kimber, of New York City, for defendant J. I. Haas, Inc.

    Shepard & Houghton, of New York City, for defendant John O. Kane Co.

    Morgan, Morgan & Carr, of New York City, for defendant American Hardware Corp.

    Thompson, Warren & Pelgram, of New York City, for defendant New York Vault Light Co.

Raymond Hull Noble, of New York City, for defendant Nason Mfg. Co.

Deyo & Bauerdorf, of New York City, for defendant McCarthy.

Kurzman & Frankenheimer, of New York City, for defendant Impervious Products Co.

Cornelius J. Earley, of New York City, for defendant Howden.

Sampson H. Schwarz, of New York City, for defendant Corcoran, Inc.

Bernard H. Arnold, of New York City, for defendant Jiffy Fire Hose & Rack Co.

PAGE, J.   This action is brought to foreclose a mechanic's lien. In all there were 25 such liens involved in this action, and several legal questions were raised upon the trial and by the briefs of various counsel which will first be considered.

[1] It is contended that as to materialmen their recovery must be limited to such materials as were delivered within the period of 90 days of the filing of the notice of lien. The cases relied upon to sustain this contention (Spencer v. Barnett, 35 N. Y. 94, 97; Goodale v. Walsh, 2 Thomp. & C. 311; Tiley v. Thousand Island Hotel Co., 9 Hun, 424; Duffy v. Baker, 17 Abb. N. C. 357) cannot now be considered as authorities. The first two arise under the Lien Law of 1853, which provided that the "notice must be filed before the expiration of thirty days after the completion of the work or within sixty days after the materials are furnished or supplied." Laws of 1853, c. 335, § 4.

In the case of Duffy v. Baker, supra, the court held that the last work done was not within the original contract and not performed at the instance and request of the person against whose interest a lien was sought to be imposed. The case of Tiley v. Thousand Island Hotel Co., supra, was decided on the authority of Spencer v. Barnett; the attention of the court evidently not having been directed to the difference in the wording of the Laws of 1873, c. 489, and the act of 1853. In Chase v. James, 10 Hun, 506, however, the court distinguished Spencer v. Barnett and Goodale v. Walsh and pointed out their inapplicability under the law of 1873. Since that time this question does not seem to have been raised. The language of section 10 of the present Lien Law is so plain that it is not strange that no one has heretofore sought to apply the decision of Spencer v. Barnett to our present statute. It provides:

"The notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or within ninety days after the completion of the contract or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished. * * *"

That this means that the lien may be filed within 90 days of the furnishing of the last item of the materials, for the balance due on the entire account, was recognized and applied, although the point does not seem to have been contested, in Landsberg & Co. v. Hein Construction Co., 135 App. Div. 819, 120 N. Y. Supp. 190. I shall hold, there-

fore, that, where the materialmen filed their notice of lien within 90 days of the furnishing of the last item of material, their lien secures the balance due for all materials furnished to this particular property.

[2] The priority of the lien of the American Hardware Company is resisted on the ground that the materials furnished were specially manufactured for this building, and hence the said company has only the standing of a lienor who has furnished labor and materials. I cannot accept this construction of the Mechanics' Lien Law, although it has been adopted by one of my Associates. Pittsburg Glass Co. v. Vanderbilt, 143 N. Y. Supp. 609. The definition of materialman in section 2 of the Lien Law, "any person other than a contractor who furnishes materials for such improvement," is not full and clear. As has been pointed out by the Court of Appeals, this language excludes a person who furnishes materials directly to the owner, but includes a person who furnishes materials to a contractor. Jackson v. Egan, 200 N. Y. 496, 94 N. E. 211. The distinction has also been drawn between the man who merely furnishes material and the man who furnishes material and performs labor to install it in the building. Herrmann & Grace v. City of New York, 130 App. Div. 531, 114 N. Y. Supp. 1107, affirmed 199 N. Y. 600, 93 N. E. 376; Jackson v. Egan, supra. These distinctions are recognized by the courts as creating anomalous conditions and are admitted to be doubtful as expressions of the true intent of the Legislature. The Lien Law should be amended in this regard and a definition given in apt words to express the meaning intended by the Legislature.

We are now asked to exclude from those entitled to a preference under the common acceptation of the term "materialmen" a third class, those who perform any work in preparation of the materials for that particular building, although they do no work in installing the materials in the building, thus limiting the term to those who sell and deliver to the contractor materials from stock on hand. The goods must be in existence in their final and complete form so that no work shall be done upon them prior to delivery. Thus, if a number dealer carries in stock timber 16 feet in length and the contractor desires timber 12 feet in length, the lumber dealer by sawing off 4 feet destroys his right of preference. Logically, if this distinction is sound, the unfortunate dealer whose stock of a particular kind of materials has been depleted, so that it is necessary for him to manufacture a new supply from which to fill the order, ceases to be a materialman within the statute. Also one who sells from samples loses the benefit of the statute. If, therefore, the time when the work is done upon the materials becomes the test, it becomes a question of the sufficiency of the stock on hand of each materialman to meet the demands of his trade. That the materials are especially manufactured for the particular building does not seem to me to constitute a valid distinction. From his experience the materialman has found that certain sizes, styles, or designs are generally acceptable. By manufacturing in quantities the cost of production is decreased and a prompt delivery is made possible. In anticipation of the demand he performs or hires labor in the production of the article. There comes a purchaser who takes some articles from the stock, but as to others the needs or taste of the purchaser has not

been foreseen, and the materialman performs or hires labor to produce the same article in a different size, style, or shape. Both articles are delivered and he performs or employs no labor subsequent to the delivery. The materials are attached to or incorporated in the edifice by others. Can it be that the law provides that as to the articles he sells from his stock he is entitled to a preference over others, but as to those that are subsequently manufactured he has no such right? If the time when the labor is performed in the production of the article is to be the test, will not the laborer, if unpaid, have a right to file a lien against the property for such work as he does upon the materials subsequently to the receipt of the order? A negative answer to these questions seems obvious. An architect prepares plans for the erection of a specific building. If he does not perform work upon the building in supervising the erection, he is not entitled to a lien; but if, in addition to preparing the plans, he supervises the erection, he is entitled to a lien because of his "active participation in the manual function of construction." Rinn v. Electric Power Co., 3 App. Div. 305, 307, 38 N. Y. Supp. 345; Thompson Starrett Co. v. Brooklyn Heights Realty Co., 111 App. Div. 358, 360, 98 N. Y. Supp. 128; Stryker v. Cassidy, 76 N. Y. 50, 32 Am. Rep. 262. I am of opinion, therefore, that the test as to preference is not the time when labor was expended in producing the material but whether the person furnishing the materials thereafter performed labor in attaching to or incorporating the materials into the building or improvement to real estate. The term "materialman," as defined by the statute and limited by the decisions above cited, refers to those who are not engaged in the construction of building or improvements upon real estate but in producing or selling to contractors with the owner materials that are incorporated in or attached to real estate by the labor of others.

[3] The American Hardware Corporation claims a lien for $1,126.30 for materials furnished from October 12, 1912, to January 27, 1913. The evidence shows that this corporation was formed December 23, 1912, and that it only furnished materials to the amount of $148.56, and it is urged that the lien must be limited to the latter amount. Prior to the organization of the American Hardware Company, the Russell & Irwin Manufacturing Company of New York was furnishing materials consisting of builders' hardware to George Vassar's Sons & Co., Incorporated, and such materials were delivered at the building and were installed therein by others. On December 23, 1912, the Russell & Irwin Manufacturing Company consolidated with three other corporations and formed the American Hardware Corporation of New York, and the branch of the new corporation which was formerly the Russell & Irwin Manufacturing Company continued its business of the Russell & Irwin Manufacturing Company without interruption or change under the name American Hardware Corporation of New York, Russell & Irwin Manufactuirng Company Division, and as such completed the contract with George Vassar's Sons & Co., Incorporated. It is well settled that there is no inchoate mechanic's lien upon real estate. The right of lien is conferred by statute, and, until a notice pursuant to statute is filed, the person with a claim stands in

no different position than any creditor. Hence an assignment of the claim carries with it no right to file a lien to secure its payment. After the notice is filed, the lien comes into existence and may then be assigned. If, therefore, the consolidation of these corporations, so far as this claim is concerned, effected an assignment of the claim by act of the parties, no right passed to the American Hardware Corporation to file a lien upon the claim transferred to it by the Russell & Irwin Manufacturing Company. The legal effect of the act of consolidation must be determined from a reading of the statutes by virtue of which the consolidation was effected. In this case the consolidation was pursuant to and by virtue of sections 7 to 10 of the Business Corporations Law (Consol. Laws, c. 4). Section 10 provides:

"Upon the consummation of such act of consolidation, all the rights, privileges, franchises and interests of each of the corporations, parties to the same, and all the property, real, personal and mixed, and all the debts due on whatever account to either of them, as well as all stock subscriptions and other things in action belonging to either of them, shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed; and all claims, demands, property and every other interest shall be as effectually the property of the new corporation as they were of the former corporations, parties to such agreement and act; and the title to all real estate, taken by deed or otherwise, under the laws of this state, vested in either of such corporations, parties to such agreement and act, shall not be deemed to revert or be in any way impaired by reason of this chapter, or anything done by virtue thereof, but shall be vested in the new corporation by virtue of such act of consolidation; and all the rights, privileges, franchises and property of the corporations, parties to any consolidation heretofore made under this chapter, shall vest as fully in the new corporation thereby created as they were vested in the corporations, parties to such consolidations."

More comprehensive language could not be employed to indicate the intention that any right, privilege, or property of any and every nature and kind that was vested in the old corporations should be by operation of law transferred to and vested in the new corporation unimpaired by the act of consolidation. It would be contrary to the expressed intention of the Legislature by a narrow construction to cut down or limit the broad and comprehensive language of this statute by holding that the right to file a lien for a claim that existed prior to the consolidation in one of the old corporations did not pass to the new, and contrary, also, to the provisions of the Lien Law that "this article is to be construed liberally to secure the beneficial interest and purposes thereof" (section 23), under which it has been held that the right to file a lien passed with the claim to a trustee in bankruptcy. Held v. City of New York, 83 App. Div. 509, 82 N. Y. Supp. 426. I shall therefore hold that the American Hardware Corporation had the right to file a notice of lien for the materials furnished by the Russell & Irwin Manufacturing Company prior to the consolidation and for such materials as it furnished subsequently thereto.

[4] Objection is raised to the notice of lien filed by the Nason Manufacturing Company because the verification which is made by the assistant treasurer is not in the exact form prescribed by the statute. It is as follows:

"Thomas F. Larkins, being duly sworn, deposes and says: I am assistant treasurer of the lienor mentioned in the foregoing notice of lien. I have read the said notice and know the contents thereof, and the statements therein stated to be alleged upon information and belief, and as to those matters I believe it to be true."

As all the statements in the notice of lien are made upon information and belief, I am of opinion that this is a substantial compliance with the statute and is a sufficient verification.

[5] The Nason Manufacturing Company furnished and delivered to the premises plumbing supplies and fixtures. The contract was originally made with the Killian Crean Company, a subcontractor, which was to install the plumbing materials in the building. This latter company became financially involved, and an agreement was thereupon made whereby the Nason Manufacturing Company agreed and did furnish the materials directly to George Vassar's Sons & Co., Incorporated, charging the same to the Vassar corporation upon its books and billing the materials to it. The Vassar corporation employed the man who had been theretofore working for the Killian Crean Company to install the materials for it. Under these circumstances I find that Nason Manufacturing Company was a materialman furnishing materials directly to George Vassar's Sons & Co., and was neither furnishing them to the subcontractor, Killian Crean Company, nor was George Vassar's Sons & Co. a guarantor of Killian Crean Company but was primarily liable for the materials furnished to it.

[6] The Jiffy Fire Hose & Rack Company has filed a notice of lien for the materials furnished by it that consisted of fire hose attached to the standpipe by couplings or by means of a loose collar in which a thread is cut which fitted to a corresponding thread on the plug of the standpipe. There is also a rack upon which the hose rests that is attached to the wall by screws. These make convenient but not necessary accompaniments to the fire extinguishing system. They are evidently easily detached. If gas and electric light fixtures, unless made especially for the particular building, do not come within the Mechanics' Lien Law (Caldwell v. Glazier, 138 App. Div. 826, 123 N. Y. Supp. 622; Wahle Phillips Co. v. Fifty-Ninth St.-Madison Ave. Co., 153 App. Div. 17, 138 N. Y. Supp. 13), it is difficult to hold that the furnishing of fire hose and racks gives a right of lien. This lien will therefore be held invalid.

The lien of John L. Keating and Michael J. Keating was held invalid upon the trial for defects in the notice and insufficiency of the answer.

[7] Although it was urged at the trial that the owner should be charged interest upon the balance found to be due upon the contract with George Vassar's Sons & Co., it is not pressed in the briefs submitted; and as the contract was not fully performed by George Vassar's Sons & Co., and because of this fact and the filing of liens they were not in position to demand payment, I do not think the owner should be charged with interest.

The foregoing covers all the questions of law. I find that there was a balance due from the owner to the George Vassar's Sons & Co., Incorporated, in the sum of $14,275.06. That the plaintiff is entitled to

judgment of foreclosure and sale, with costs, and an additional allowance of 5 per cent. on the amount hereinafter adjudged to be due upon his lien. That the following liens are established at the amounts severally set opposite the names of the lienors who are entitled to priority in payment in the order named, in so far as the sum of $14,275.06 will pay the same, with costs, and as to those liens which cannot be wholly paid out of said sum the lienors will be entitled to enter a personal judgment against George Vassar's Sons & Co., Incorporated, for the amounts respectively their due, with costs:

Hull, Grippen & Co., $106.93, with interest thereon from the 1st day of February, 1913.

John O. Kane Company, $566.44, with interest from February 1, 1913.

American Hardware Corporation, $1,126.30, with interest from February 1, 1913.

Nason Manufacturing Company, $1,358.36, with interest from February 1, 1913.

John H. Goetchins, $8,436, with interest from January 30, 1913.

Albert N. Chambers (the plaintiff), $3,235, with interest from January 31, 1913.

Davis Brown, $2,908.71.

Monarch Metal Manufacturing Company, $1,800, with interest from January 31, 1913.

Architectural Cornice & Skylight Works, $3,329, with interest from January 31, 1913.

Otis Elevator Company, $4,300, with interest from January 31, 1913.

The Sykes Company, $932, with interest from February 1, 1913.

Rudolph Seus, $1,685, with interest from February 1, 1913.

John Jordis Iron Works, $2,384.04, with interest from February 1, 1913.

J. I. Haas, Incorporated, $440, with interest from February 1, 1913.

New York Vault Light Company, $176, with interest from February 1, 1913.

James McCarthy, $1,419.90, with interest from February 3, 1913.

Impervious Products Company, $110, with interest from February 3, 1913.

Thomas F. Howden, doing business as the Howden Tile Company, $148, with interest from ————.

J. I. Haas, Incorporated, $110, with interest from February 4, 1913.

A. J. Corcoran, Incorporated, $200, with interest from February 5, 1913.

Requests to find so far as presented have been passed upon. Settle findings in accordance therewith and as indicated in this opinion and decree upon notice.

Judgment accordingly.