[Civ. No. 26485. Fourth Dist., Div. One. July 13, 1983.]

COAST ELECTRIC CO., Plaintiff and Respondent, v.
INDUSTRIAL INDEMNITY COMPANY, Defendant and Appellant.

COUNSEL

Norvin L. Grauf for Defendant and Appellant.

Muns, Mehalick & Lynn and James B. Mehalick for Plaintiff and Respondent.

OPINION

**STANIFORTH, J.**— This is an appeal from a judgment in favor of plaintiff materialmen Coast Electric Co. (Coast) against defendant surety company Industrial Indemnity Company (Industrial). The sole question is whether Coast's claim is enforceable as to electrical materials delivered more than 90 days before the "preliminary bond notice" was given pursuant to Civil Code section 3091.[1]

FACTS

Industrial issued a payment bond as required by Civil Code section 3247 at the request of Raymond A. Whitwer, the prime contractor on a public works project, Poway School No. 10. Industrial's bond was for the principal sum of $1,524,250 and provided, upon default by Whitwer or any of his subcontractors, for payment for materials and supplies used in the construc-

---

[1]See Discussion I, *infra.*

tion. Industrial, as surety, was obligated upon such default to pay all sums due together with a reasonable attorney fee. After acquiring this bond, Whitwer contracted with Universal Electric (Universal) to become the electrical subcontractor—to furnish electrical work and materials for the Poway school.

Coast agreed to supply Universal electrical materials for the Poway school project. On July 11 and 12, 1977, Universal issued two written purchase orders to Coast. These orders described the material Universal would buy from Coast and install on the Poway school job. Upon receipt of the purchase orders, Coast supplied the electrical materials described to Universal and these materials were in fact used on the work of improvement, the Poway school. Coast billed Universal for the reasonable value of materials in the sum of $49,608.10. These materials were accompanied by 26 separate invoices. The materials for each of the invoices were either picked up by Universal at Coast's place of business or were shipped directly to the job site. The materials were delivered between November 14, 1977, and May 25, 1978.

In the course of construction of the school, Universal became insolvent, was unable to pay its debts. As a result Coast was not paid for any of the materials it supplied to Universal and used on the school. On August 11, 1978, within 90 days of the last materials delivery, Coast sent Whitwer a 90-day preliminary bond notice informing Whitwer Coast had provided material totaling $49,608.10, the amount was unpaid and Coast was making a claim against the payment bond. This bond notice was sent by certified mail, return receipt requested. The receipt was returned to Coast signed on behalf of Whitwer on August 12, 1978. Thus, the 90-day preliminary bond notice was mailed and received within 90 days of the date the last materials were furnished to the job site. Upon Whitwer's and the bonding company's refusal to pay the claim, Coast brought this action to recover $49,608.10 plus interest and attorney fees.

DISCUSSION

I

Section 3091 of the Civil Code provides: "The notice is required only on public works, and is a necessary prerequisite to enforcement of a claim on a payment bond. The notice shall be in writing and shall state with substantial accuracy the amount claimed, and the name of the party to whom the claimant furnished labor, services, equipment, or materials. The notice shall be given within 90 days from the date on which the claimant furnished the last labor, services, equipment, or materials for which such claim is made."

Industrial would construe the foregoing statute to mean that where there are a series of independent contracts for materials furnished a public project under an open account, a claim may be made *only for materials delivered within 90 days of the date of the required notice.* As to materials which were contracted for and *delivered before* the 90-day period immediately preceding the required notice, Industrial asserts the claim is not allowable.[2]

■ Industrial's contentions fail in several critical respects. Contrary to Industrial's contention, the statute contains no language limiting a claimant to only those materials provided to the job site within the 90-day period immediately preceding the bond notice. The plain language of the statute is neither ambiguous nor does it expressly or by implication limit the claim to materials provided within 90 days of the date the notice is given.

Industrial asserts the words "such claim" must refer only to materials furnished within the 90-day period immediately preceding the notice, arguing the word "such" in the phrase "such claim" is either (1) surplusage or (2) expresses a statutory intent to limit the claim on the payments of bond and services and equipment or materials furnished within 90 days from the date last furnished and within 90 days of the notice given. Industrial's reasoning process from the statutory words to this conclusion is opaque.

This argument improperly ignores other language in the statute. When the search for legislative intent is extended to include the two sentences preceding those quoted, the claim of surplusage, ambiguity, or Industrial's 90 days before notice interpretation disappears. The words "such claim" plainly refers to the "*claim*" referred to in the two preceding sentences. The words "such claim" are intended to refer back to a "claim" on a "bond payment" and "the amount claimed." A fair reading of the entire statute—and we must read it as a whole—means "[t]he notice shall be given within 90 days from the date on which claimant furnished the last . . . materials for which [claim on a payment bond] is made." (Civ. Code, § 3091.) This interpretation is compelled by long standing rules of statutory construction. Industrial's interpretation leads to an absurd result. Bond notices would be required *every 90 days* in the course of a continuing job if the materialman sought to protect himself by seeking recourse to the bond. This repetitious filing would be necessary even though there was no default, nor threat of default, then present.

There is no legislative intent to be gleaned anywhere of a limitation on a claim to only those materials furnished within 90 days of the notice given.

---

[2]At oral argument Industrial's counsel conceded to extending the period for which recovery could be made to *90 days immediately preceding the date the last materials were delivered to the job site.*

Such construction would abrogate much of the broad protection given materialmen and suppliers by the statute. Such a restriction would drastically amend the statute. The reasonable interpretation of the plain language of the statute does not support Industrial's argument.

California courts have not ruled specifically on the issue of whether Civil Code section 3091 90-day notice entitles a claimant to recover for all materials provided to the project or limits the supplier to only those materials provided within the last 90 days before notice. However, by precise judgments several California cases have allowed a plaintiff's claim for all materials provided to a job site, not just those provided within 90 days of the notice. In *General Elec. Co.* v. *Central Surety & Ins. Corp.* (1965) 232 Cal.App.2d 590 [43 Cal.Rptr. 48], the plaintiff sued for the value of materials provided an electrical subcontractor who went bankrupt while installing materials on a California public works project. The action, as is the case at bench, was on the general contractor's public works bond. The plaintiff provided electrical materials to the job site between July 6, 1961, and November 25, 1961. (*Id.*, at p. 598.) The plaintiff gave written notice December 16, 1961, within 90 days of delivery of the last materials. The appeal court allowed the plaintiff to recover for the value of all materials it provided during the entire period. Plaintiff was not limited to recovery for only those materials provided within 90 days of the December 17 notice. A similar result was obtained in *California Elec. Supply Co.* v. *United Pac. Life Ins. Co.* (1964) 227 Cal.App.2d 138 [38 Cal.Rptr. 179].

## II

In light of the paucity of authority interpreting Civil Code section 3091, California courts have turned to federal cases interpreting the federal public works statute. Those statutes, commonly known as the Miller Act (40 U.S.C.A., § 270b), are similar in content to the California public works statute. Civil Code section 3091 is commonly referred to as the "Little Miller Act." (*California Elec. Supply Co.* v. *United Pac. Life Ins. Co.*, *supra,* at p. 144.)

The federal cases have uniformly held notice by the materialmen to the prime contractor of nonpayment by a subcontractor for materials furnished by them is in time as to *all* deliveries *if given within 90 days from the date of the last delivery. (United States* v. *Andrews* (4th Cir. 1969) 406 F.2d 790; *Noland Company* v. *Allied Contractors, Incorporated* (4th Cir. 1959) 273 F.2d 917; *United States* v. *George A. Fuller Co.*(D.C. Mont. 1965) 250 F.Supp. 649; *United States* v. *M. S. I. Corporation* (D.C. N.J. 1965) 246 F.Supp. 337; *United States* v. *Bregman Construction Corp.* (E.D. N.Y. 1959) 172 F.Supp. 517.)

In *United States* v. *Andrews, supra,* 406 F.2d 790, materialmen provided materials to a subcontractor who in turn installed them on a public works job. The materialman was unpaid and filed suit on the prime contractor's payment bond under the Miller Act. Written bond notice was given on January 25, 1967, within 90 days of the final shipment to the job site but more than 90 days after other shipments to the job site. The court addressed the precise issue here and concluded because the notice was within 90 days of the last delivery of materials it was timely as to all materials. "[N]otice being timely, recovery of the entire unpaid balance due . . . was properly allowed." (*Id.,* at p. 793.)

In *Noland Company* v. *Allied Contractors, Incorporated, supra,* 273 F.2d 917, the trial court resolved the issue against the materialmen limiting recovery to only the materials furnished within 90 days of the statutory notice. In reversing the Circuit Court of Appeals said: "[I]f all the goods in a series of deliveries by the materialman to a subcontractor are used on the same government project, the notice is in time as to all of the deliveries if it is given within 90 days of the last delivery." (*Id.,* at p. 920.)

## III

Industrial seeks to distinguish between materials delivered on an open-account basis and deliveries made pursuant to an all-inclusive contract. However, case authorities cited by Industrial are not in point and unpersuasive even by way of analogy. Some cases cited by Industrial expressly point to the irrelevancy of this argument. For example, *United States* v. *Andrews, supra,* 406 F.2d 790, noted the claim was for the unpaid balance on an open account. "[The materialmen's] notice being timely, recovery of the entire unpaid balance due it from Wade was properly allowed. *This is the command of the statute regardless of whether the subcontractor entered into a single contract with its supplier or, as was the case here, purchased materials under a series of separate orders.*" (*Id.,* at p. 793; italics added.) *Noland Company* v. *Allied Contractors, Incorporated, supra,* 273 F.2d 917, 920 also regards the argument as irrelevant.

It was pointed out in *United States* v. *Bregman Construction Corp., supra,* 172 F.Supp. 517: "The 90 day period is not stated to be measured from the date of the last delivery of the materials under an entire contract or on a running account or under each separate order. The Miller Act contemplates one such notice within 90 days from the furnishing of the last materials furnished in the prosecution of the prime contract from which claim is made." (*Id.,* at p. 522.)

IV

Industrial cites certain cases for the proposition there is a "split" in the authorities regarding the effect of the notice requirement in the Miller Act where materials are furnished to subcontractors on an open account and deliveries extended over a period in excess of 90 days. Two cases are cited: *United States* v. *Peter Reiss Construction Co.* (2d Cir. 1959) 273 F.2d 880 [78 A.L.R. 2d 409], and *United States* v. *Sovereign Construction Company* (S.D.N.Y. 1972) 338 F.Supp. 657. These cases *involve a 90-day time gap* in deliveries of materials to the job site by the materialmen. In both cases after the materialmen commenced deliveries to the job site there was a 90-day period in which no deliveries were made, after which deliveries again were resumed. The materialmen's notice was not given until after resumption of the deliveries. Both cases held as to the deliveries before the 90-day gap, the written notice had not been given within 90 days of the date the materials were last provided. Hence the claimant could recover only for the shipments following the 90-day gap. (*United States* v. *Peter Reiss Construction Co., supra,* at p. 881; *United States* v. *Sovreign Construction Company, supra,* at p. 661.) The court was most explicit, holding this rule should apply only where there is in fact a 90-day gap. Said the court: "We are not here required to decide whether, when a materialman makes deliveries under a series of purchase orders so that each delivery is within 90 days of its predecessor, a notice given within 90 days of the last order or delivery will relate back to include the entire chain." (*United States* v. *Peter Reiss Construction Co., supra,* 273 F.2d at p. 881.)

This is not a 90-day gap case. Invoices before the trial court demonstrate without question that the materials were provided to the subcontractor during the period November 14, 1977, through May 25, 1978. The exhibits show materials were provided during each month. Over the seven months there was no 90-day gap.

Finally, Industrial has cited certain cases which do not appear to be factually in point. In *New York Plumbers' Spec.* v. *W. J. Barney Corp.* (1976) 52 App.Div.2d 832 [384 N.Y.S.2d 1], the court was not interpreting the New York statute but rather the language contained in the bond. The case does not disclose the nature of that language. However, where the decision in New York courts has turned upon state statutory language (similar to our Civ. Code, § 3091) the result has been contrary to the *New York Plumbers* case, *supra.* (See *United States* v. *Bregman Construction Corp., supra,* 172 F.Supp. 517; *Chambers* v. *George Vassar's Sons & Co.* (1913) 81 Misc. 562 [143 N.Y.S. 615].) Nor does *United States* v. *H. S. Kaiser, Inc.*. (E.D. Wis. 1967) 270 F. Supp. 215, support Industrial's contention. The court there held the oral notice within 90 days followed by a written notice outside

the 90-day period did comply with the Miller Act. Other cases cited by Industrial are not applicable. For example in *Western Cas. and Sur. Co.* v. *Honeywell, Inc.* (Miss. 1980) 380 So.2d 1385, the action was brought under the public works statute of the State of Mississippi which does not require a 90-day notice, as does California Civil Code section 3091. The Mississippi statute requires suit be filed within one year of completion of the project. In *Western Casualty* there was a 90-day notice requirement in the bond; the question was whether this was a valid requirement in light of the one-year statute. Industrial also cites *Garff* v. *J. R. Bradley Company* (1968) 84 Nev. 79 [436 P.2d 428], where the court considered a Nevada public works statute which requires two notices be given by materialmen making a claim on a general contractor's public works payment bond. *Garff's* claimant had given but one of the two required notices and the court held such failure was fatal. This case is patently irrelevant.

## V

Finally, Industrial appeals to fairness and equity claiming it is unfair to hold the contractor, through the bondsman, liable in these circumstances. It is argued the contractor will by reimbursement of the bondsman be ultimately exposed to liability and thus be required to pay the obligation twice. This may be true if the contractor has paid a subcontractor who thereafter fails to pay his supplier. This argument fails for these reasons. The general contractor uniquely has a number of remedies available to protect himself from the claims of the materialmen. These remedies include withholding payment for 90 days, paying subcontractors with checks issued jointly with materialmen and requiring performance bonds from the subcontractors.

A similar "equity" argument was addressed and rejected in *California Elec. Supply Co.* v. *United Pac. Life Ins. Co., supra,* 227 Cal.App.2d 138: "If [the general contractor] elects to pay a subcontractor prior to the expiration of the time within such notice may be given he does so at his peril and without prejudice to the right of action upon such bond by the person to whose benefit it inures . . . . [T]he prime contractor may protect himself against claims arising in favor of laborers and materialmen employed . . . by exacting from the subcontractor a bond . . . . " (*Id.,* at p. 150.) In *Post Brothers Constr. Co.* v. *Yoder* (1977) 20 Cal.3d 1, [141 Cal.Rptr. 28, 569 P.2d 133], the Supreme Court observed that the use of joint checks is well established by custom and practice in the construction industry, thus "eliminating the risk the subcontractor will not pay the person with whom he has contracted." (*Id.,* at p. 6.) ▪ ▪▪▪ The appeal to equity is weightless.[3]

---

[3]Industrial's set-off argument based upon the concept of estoppel is not here for our consideration. The defense of estoppel cannot be raised for the first time on appeal. It is an affirmative defense which must be pleaded and proved in the lower court. (*Greiner* v. *Kirkpatrick,* (1952) 109 Cal.App.2d 798, 801 [241 P.2d 564].)

## VI

Coast is entitled to recover additional attorney fees for this appeal. The statute requires reasonable fees be fixed by the court. (Civ. Code, § 3250.) Also, by the express language of the payment bond, a reasonable attorney fee is to be fixed by the court. Upon remand, the trial court, after hearing, shall set the fee for the attorney's work on this appeal by Coast's attorney and make such sum, by amendment, a part of the trial court judgment.

The cause is remanded for setting of attorney fees for services rendered on this appeal and amending of judgment to include the sum awarded. The judgment is in all respects affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.