Opinion
 

 NICHOLSON, J.
 

 A subcontractor provided the underlying base material for streets in a new subdivision and contracted with Granite Construction Company to pave these streets. After Granite finished the paving, the sub-base proved defective, damaging Granite’s work, and government inspectors refused to approve the street work. After protracted negotiations, Granite applied a seal coat to the street paving and absorbed the cost. As a result of Granite’s action, government officials granted the necessary approvals. However, no one ever paid Granite for the street paving. Both the original contractor and the subcontractor subsequently filed for bankruptcy, and the surety for the subdivision project, American Motorists Insurance Company, denied Granite’s claim. Granite was forced to bring this action against American Motorists for $45,585.45.
 

 American Motorists appeals from the trial court’s grant of summary judgment and award of attorney fees and costs to Granite. American Motorists contends (1) Granite did not timely serve the requisite 90-day
 
 *662
 
 public works preliminary bond notice, and (2) Granite was not entitled to attorney fees and costs incurred prior to the institution of this action on the bond. After American Motorists filed this appeal, Granite cross-appealed, challenging the rate of interest on the judgment and the interest accrual period. We affirm the grant of summary judgment and the award of attorney fees and costs. We reverse the amended judgment’s reduction in the rate of interest and the interest accrual period.
 

 Facts
 

 Longview Corporation contracted with the City of Roseville and the County of Sacramento to construct the Vernon Oaks subdivision, which straddles the Sacramento-Placer County line. These contracts required the construction of public improvements for which Longview was required to provide performance and payment bonds.
 
 [1]
 
 American Motorists provided the necessary bonds. Site Contractors subcontracted with Longview to do site improvements for the subdivision, and Granite sub-subcontracted with Site Contractors to lay asphalt concrete street paving.
 

 Granite and Site Contractors entered into a single contract, which sets forth a unit price of $28.30 per ton of asphalt concrete and states “the sum of 1.5% per month shall be added to any balance unpaid when due.” The contract further provides: “The intent of this Subcontract is to place an [asphalt concrete] pavement section on existing grade. Since the new [asphalt concrete] pavement shall be placed on existing grade, Granite Construction Company shall not be responsible for any drainage problems and/or pavement subgrade failures.”
 

 In accordance with the contract, Site Contractors prepared the underlying base material for the asphalt concrete. On January 20, 1989, Granite completed the initial laying of asphalt concrete. Granite billed Site Contractors and Longview Corporation a total of $45,585.45 for this work in January 1989. However, the underlying base material failed, damaging the asphalt concrete, and the county and city inspectors refused to grant final approval of the street work. After lengthy negotiations, Granite agreed to apply a seal coat to the asphalt concrete. Pursuant to Granite’s directions, A & B Asphalt Sealing Company applied the seal coat on May 26, 1989, and Granite absorbed the $2,555 cost.
 

 On June 20, 1989, Granite served Longview with notice of the amount owed, stating the project on which work was completed and the nature of the
 
 *663
 
 work. Both Longview and Site Contractors filed for bankruptcy, and Granite subsequently filed this action against American Motorists to recover on the payment bond. The trial court granted summary judgment, awarding Granite $45,585.45 plus interest at the contractual rate of 1.5 percent per month from January 23, 1989. The court also awarded Granite $19,812.50 in attorney fees and $1,656.87 in costs. After American Motorists moved for reconsideration, the trial judge amended the judgment to reduce the interest rate from 18 to 10 percent, and to accrue interest only from June 20,1989, the date of the notice.
 

 Discussion
 

 I
 

 90-day Notice
 

 American Motorists first challenges the timeliness of Granite’s 90-day notice pursuant to Civil Code sections 3091
 
 [2]
 
 and 3252.
 
 [3]
 
 American Motorists claims more than 90 days elapsed between Granite’s completion of its initial work in January and the application of the seal coat in May, thus invoking the “90-day gap rule.” American Motorists also asserts the seal coat is not part of Granite’s “claim” because Granite imposed no charge for this work.
 

 A.
 
 “90-Day Gap Rule”
 

 “In light of the paucity of authority interpreting Civil Code section 3091, California courts have turned to federal cases interpreting the federal public works statute. Those statutes, commonly known as the Miller Act (40 U.S.C.A. § 270b), are similar in content to the California public works
 
 *664
 
 statute.[
 
 4
 
 ] Civil Code section 3091 is commonly referred to as the ‘Little Miller Act.’ [Citation.]”
 
 (Coast Electric Co.
 
 v.
 
 Industrial Indemnity Co.
 
 (1983) 144 Cal.App.3d 879, 883 [193 Cal.Rptr. 74].)
 

 The “90-day gap rule” stems from interpretations of the Miller Act in
 
 United States
 
 v.
 
 Peter Reiss Construction Co.
 
 (2d Cir. 1959) 273 F.2d 880, and
 
 United States
 
 v.
 
 Sovereign Construction Company
 
 (S.D.N.Y. 1972) 338 F.Supp. 657. (See
 
 Coast Electric Co.
 
 v.
 
 Industrial Indemnity Co., supra,
 
 144 Cal.App.3d at p. 885.) In these two cases, “after the materialmen commenced deliveries to the jobsite there was a 90-day period in which no deliveries were made, after which deliveries again were resumed. The materialmen’s notice was not given until after resumption of the deliveries. Both cases held as to the deliveries before the 90-day gap, the written notice had not been given within 90 days of the date the materials were last provided. Hence the claimant could recover only for the shipments following the 90-day gap.”
 
 (Ibid.)
 

 Granite conducted its work for Site Contractors pursuant to a single contract. In contrast, both
 
 Peter Reiss
 
 and
 
 Sovereign
 
 involved a series of orders rather than a single contract
 
 and expressly so limited their holdings.
 
 According to the
 
 Peter Reiss
 
 case, the “90-day gap rule” concerns “the date when the Miller Act . . . requires notice to be given to a contractor by a materialman who has furnished supplies to a subcontractor pursuant to
 
 a series of orders as distinguished from an over-all contract.” (United States
 
 v.
 
 Peter Reiss Construction Co., supra,
 
 273 F.2d at p. 880, italics added.) Similarly, the
 
 Sovereign
 
 case limits its holding to cases where “a gap of
 
 *665
 
 more than ninety days exists between deliveries under
 
 a series of purchase orders
 
 . . . .”
 
 (United States
 
 v.
 
 Sovereign Construction Company, supra,
 
 338 F.Supp. at p. 661, italics added.)
 

 Granite did not have a series of purchase orders with Site Contractors, but instead operated pursuant to a single contract. Accordingly, the “90-day gap rule” is inapplicable.
 
 [5]
 

 American Motorists asserts the delay here does “grave violence to the purpose of the statute . . . because the primary purpose of the statute . . . [is] for the protection of the prime contractor, . . . who can only protect himself from the risk of double payment by [withholding payment for 90 days].” However, “this purpose, although important in itself, is subsidiary to the main purpose of the act to protect those whose labor and materials enter into the prosecution of the work; and if there be an ambiguity in the provisions relating to the minor purpose, it should be resolved in support of the main object of the law.”
 
 (Noland Co.
 
 v.
 
 Allied Contractors, Inc.
 
 (4th Cir. 1959) 273 F.2d 917, 921.) Moreover, the “general contractor uniquely has a number of remedies available to protect himself from the claims of the materialmen. These remedies include withholding payment for 90 days, paying subcontractors with checks issued jointly with materialmen and requiring performance bonds from the subcontractors. . . . [¶] [T]he use of joint checks is well established by custom and practice in the construction industry, thus ‘eliminating the risk the subcontractor will not pay the person
 
 *666
 
 with whom he has contracted.’ [Citation.] The appeal to equity is weightless.”
 
 (Coast Electric Co.
 
 v.
 
 Industrial Indemnity Co., supra,
 
 144 Cal.App.3d at p. 886.)
 
 [6]
 

 B.
 
 Seal Coat as Part of “Claim”
 

 American Motorists’ remaining contention with respect to notice pertains to whether the seal coat is a part of Granite’s “claim.” The applicable statute states, in pertinent part: “The notice is required only on public works, and is a necessary prerequisite to enforcement of a claim on a payment bond. The notice shall be in writing and shall state with substantial accuracy the amount claimed, and the name of the party to whom the claimant furnished labor, services, equipment, or materials. The notice shall be given within 90 days from the date on which the claimant furnished the last labor, services, equipment, or materials for which such claim is made.” (Civ. Code, § 3091.)
 

 American Motorists argues the seal coat cannot constitute “labor, services, equipment, or materials for which such claim is made” because Granite did not charge for this work. American Motorists cites
 
 Coast Electric Co.
 
 v.
 
 Industrial Indemnity Co., supra,
 
 and
 
 United States etc.
 
 v.
 
 United States Fidelity & Guaranty Co.
 
 (4th Cir. 1970) 422 F.2d 597, neither of which stands for this proposition. In
 
 Coast Electric Co., supra,
 
 the court held a supplier of materials pursuant to 26 separate invoices could recover for all of the materials furnished and not merely for those delivered within the 90 days immediately preceding the date of the notice. (144 Cal.App.3d at pp. 881-883.) In
 
 United States Fidelity & Guaranty Co., supra,
 
 the court held a materialman’s notice untimely, finding the last two deliveries did not constitute part of the claim because they were sent COD and were paid on delivery. (422 F.2d at p. 600.)
 

 
 *667
 
 The more closely analogous authorities support the inclusion of the seal coat as part of Granite’s claim. (See
 
 United States for Use of P.A. Bourquin & Co., Inc.
 
 v.
 
 Chester Const. Co.
 
 (2d Cir. 1939) 104 F.2d 648, 649 [although “the last of the labor” for which claim was made was charged back, this labor commenced running of 90-day notice period]; see also
 
 United States etc.
 
 v.
 
 U.S. Fidelity and Guaranty Co.
 
 (5th Cir. 1981) 656 F.2d 993, 996 [lighting ballasts delivered at no charge and notice given 90 days thereafter; “[t]he fact no separate charge was made for these ballasts does not preclude their effect for notification purposes”];
 
 United States
 
 v.
 
 Gunnar I. Johnson & Son, Inc.
 
 (8th Cir. 1962) 310 F.2d 899, 903 [notice given within 90 days of installing parts was timely even though no charge imposed for parts].) The seal coat was the last labor furnished on the project for which Granite seeks payment under the bond, and the fact Granite did not pass this charge along to Site Contractors is of no significance.
 

 II
 

 Attorney Fees and Costs
 

 As part of the attorney fees award, the trial court permitted Granite to recover attorney fees and costs incurred in pursuing payment from Longview Corporation and Site Contractors before those two entities sought the protection of the bankruptcy court.
 
 [7]
 
 American Motorists argues the bond provides only for attorney fees and costs incurred in the course of the instant action.
 
 [8]
 

 
 *668
 
 The payment bond provides for attorney fees as follows: “Now Therefore, said principal [Longview Corporation] and the undersigned as corporate surety [American Motorists Insurance Company], are held firmly bound unto the County of Sacramento and all contractors, subcontractors, laborers, materialmen and other persons employed in the performance of the aforesaid agreement and referred to in the aforesaid Code of Civil Procedure, in the sum of [$76,750], for materials furnished or labor thereon of any kind, or for amounts due under the Unemployment Insurance Act with respect to such work or labor, that said surety will pay the same in an amount not exceeding the amount hereinabove set forth, and also in case suit is brought upon this bond, will pay, in addition to the face amount thereof, costs and reasonable expenses and fees, including reasonable attorney’s fees, incurred by County in successfully enforcing such obligation, to be awarded and fixed by the court, and to be taxed as costs and to be included in the judgment therein rendered. [¶] It is hereby expressly stipulated and agreed that this bond shall inure to the benefit of any and all persons, companies and corporations entitled to file claims under Title 15 (commencing with Section 3082) of Part 4 of Division 3 of the Civil Code, so as to give a right of action to them or their assigns in any suit brought upon this bond.” This language mirrors the statutory requirements of Government Code section 66499.2.
 
 [9]
 

 The trial court concluded this provision was “broad enough to include attorney fees incurred to pursue the principal obligor as part of enforcing the obligation, including the suit on the bond,” and we agree with the trial court’s interpretation. The bond provides
 
 “in case suit is brought upon this bond,”
 
 the surety “will pay, in addition to the face amount [of the bond],
 
 *669
 
 costs and reasonable expenses and fees, including reasonable attorney’s fees, incurred ... in successfully enforcing such
 
 obligation
 
 . . . .” (Italics added.) American Motorists attempts to equate “obligation” to “[a] suit . . . brought upon this bond.” However, the statute does not provide for an award of costs, expenses, and fees for “prevailing in such an action,” but rather for “successfully enforcing such obligation.” “Obligation” is a broader term and must be so construed.
 

 Our construction is consistent with general suretyship principles. A surety’s liability is commensurate with the liability of the principal. (Civ. Code, § 2808.) Although a surety may contractually limit the extent of its obligation, we must interpret the surety contract “ ‘by the same rules used in construing other types of contracts, with a view towards effectuating the purposes for which the contract was designed.’ ”
 
 (City of Sacramento
 
 v.
 
 Trans Pacific Industries, Inc.
 
 (1979) 98 Cal.App.3d 389, 402 [159 Cal.Rptr. 514].) We construe ambiguities against the drafter.
 
 (Cathay Bank
 
 v.
 
 Lee
 
 (1993) 14 Cal.App.4th 1533, 1541 [18 Cal.Rptr.2d 420].)
 

 In addition to the use of the term “obligation,” the bond contains a broad provision agreeing to pay, in addition to the bond’s face amount, “costs and reasonable expenses and fees, including reasonable attorney’s fees.” An agreement to pay “reasonable expenses and fees,” including attorney fees, in enforcing the “obligation” certainly may be construed to encompass an award of the fees and costs Granite incurred in initially pursuing payment against the principals.
 

 American Motorists also asserts because the bond refers to “successfully” enforcing the obligation, and Granite’s previous attempts to recover from Longview and Site Contractors were unsuccessful, Granite may not recover its previously incurred fees. We disagree. The initial refusal of Site Contractors to pay the amount due triggered the surety’s obligation under the payment bond. At that point, American Motorists became liable to Granite not only for the amount wrongfully withheld, but also, by statute and under the provisions of the bond, for any fees Granite might incur in enforcing the obligation to pay for labor, services, and materials rendered. Granite has successfully enforced the obligation by prevailing in this action. We uphold the award.
 
 [10]
 

 
 *670
 
 III
 

 Interest Rate and Accrual Period
 

 A.
 
 Interest Rate
 

 The contract between Granite and Site Contractors provides: “[T]he sum of 1.5% per month shall be added to any balance unpaid when due.” In its cross-appeal, Granite contends the trial court abused its discretion in reducing the applicable interest rate from the contractual 18 percent rate to 10 percent, and permitting the accrual of interest only from the date of notice. Granite’s contentions have merit.
 

 American Motorists first argues Granite is prohibited from recovering the 18 percent interest rate because this rate was not included in Granite’s 90-day notice. We find this argument unpersuasive. Although Civil Code section 3091 requires a claim must be stated with “substantial accuracy,” this term “is not defined in the statute, legislative history, or subsequent case law.”
 
 (Blair Excavators, Inc.
 
 v.
 
 Paschen Contractors, Inc.
 
 (1992) 9 Cal.App.4th 1815, 1820, fn. 2 [12 Cal.Rptr.2d 420].) “[T]he courts have liberally construed these statutory remedies ... to provide adequate compensation for those providing materials or services to public works projects” and, “in the absence of a showing of prejudice, the amount of the section 3091 notice does not limit the amount of recovery.”
 
 (Id.
 
 at p. 1819.)
 

 American Motorists next argues Granite’s recovery is “limited to the reasonable value of the permanent improvement to the real property. . . . As a consequence, the one and one-half percent per month charge should not be included as part of the principal recovery under the bonds because the charge does not reflect any permanent improvement value.” However, the authorities cited by American Motorists pertain to mechanics’ liens and thus are inapplicable here.
 
 [11]
 
 American Motorists also asserts “the one and one-half percent per month charge here involved is not interest; rather it is part of the cost of the work.” However, the sole authority cited for this proposition simply holds such a provision does not violate the usury law.
 
 (Southwest Concrete Products
 
 v.
 
 Gosh Construction Corp.
 
 (1990) 51 Cal.3d 701, 704, 709 [274 Cal.Rptr. 404, 798 P.2d 1247].)
 

 American Motorists further argues Granite may not recover this rate of interest because the bond did not specify an interest rate, and thus the 10
 
 *671
 
 percent interest rate of Civil Code section 3289, subdivision (b) applies.
 
 [12]
 
 However, the purpose of the bond was to provide recourse for those who furnished labor, services, equipment, or materials for use in the Vernon Oaks Subdivision and who were not paid. The cost of the labor, services, or materials “included the interest charges which [Site Contractors] agreed to pay as the price of the retention of sums due [Granite] for more than 30 days. . . .” (See
 
 General Elec. Co.
 
 v.
 
 Central Surety & Ins. Corp.
 
 (1965) 232 Cal.App.2d 590, 602 [43 Cal.Rptr. 48], citations omitted.) Granite is entitled to prejudgment interest at the contractual rate of 18 percent.
 

 B.
 
 Accrual Period
 

 The trial court provided no explanation for shortening the interest accrual period to June 20, 1989, the date of the notice. American Motorists contends “the right to sue on these bonds was not ‘vested’ ” until Granite provided the 90-day notice and thus no interest may accrue until June 20, 1989. American Motorists cites no case authority for this proposition.
 

 “Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.” (Civ. Code, § 3289, subd. (a).) “Although there was no specific agreement respecting interest, the purpose of the bond was to indemnify” unpaid laborers and suppliers. (See
 
 Hollywood Elec. Co.
 
 v.
 
 Jack Baskin, Inc.
 
 (1956) 146 Cal.App.2d 399, 404 [303 P.2d 1049].) Site Contractors owed Granite 1.5 percent per month on the unpaid balance beginning 30 days after the initial billing, and a surety is liable “immediately upon the default of its principal.” (Civ. Code, § 2807;
 
 Sukut-Coulson, Inc.
 
 v.
 
 Allied Canon Co.
 
 (1978) 85 Cal.App.3d 648, 654 [149 Cal.Rptr. 71].) Granite is entitled to prejudgment interest beginning February 23, 1989, 30 days after the unpaid balance first became due.
 
 (Hollywood Elec. Co.
 
 v.
 
 Jack Baskin, Inc., supra,
 
 146 Cal.App.2d at p. 404; see also
 
 General Elec. Co.
 
 v.
 
 Central Surety & Ins. Corp., supra,
 
 232 Cal.App.2d at pp. 601-603.)
 

 Disposition
 

 The trial court’s amended judgment is reversed insofar as it limits the interest rate to 10 percent and permits interest to accrue only from the date of notice. The superior court is directed to amend the judgment to award interest on the principal amount at the rate of 18 percent per annum from
 
 *672
 
 February 23, 1989. In all other respects, the judgment is affirmed. Granite shall recover its costs on appeal.
 

 Blease, Acting P. J., and Sparks, J., concurred.
 

 [1]
 

 “ ‘Payment bond’ means a bond with good and sufficient sureties which is conditioned for the payment in full of the claims of all claimants and which also by its terms is made to inure to the benefit of all claimants so as to give such persons a right of action to recover upon such bond in any suit brought to foreclose the liens provided for in this title or in a separate suit brought on such bond. Either an owner or an original contractor may be the principal upon any payment bond.” (Civ. Code, § 3096.)
 

 [2]
 

 Civil Code section 3091 provides: “ ‘Ninety-day public works preliminary bond notice’ ’’ means a notice which must be given by any claimant other than one of the following: [1] (a) A claimant who performs actual labor for wages or an express trust fund as described in Section 3111. [5] (b) A claimant who has a direct contractual relationship with the original contractor. [¶] The notice is required only on public works, and is a necessary prerequisite to enforcement of a claim on a payment bond. The notice shall be in writing and shall state with substantial accuracy the amount claimed, and the name of the party to whom the claimant furnished labor, services, equipment, or materials. The notice shall be given within 90 days from the date on which the claimant furnished the last labor, services, equipment, or materials for which such claim is made, [¶] The notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the original contractor at any place he maintains an office, or conducts his business, or his residence, or by personal service.”
 

 [3]
 

 Civil Code section 3252 provides: “In order to enforce a claim upon any payment bond given in connection with a public work, a claimant must give the 90-day public works preliminary bond notice as provided in Section 3091.”
 

 [4]
 

 40 United States Code Annotated section 270b(a), provides: “Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him:
 
 Provided, however,
 
 That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop [iic] addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.” (Italics in original.)
 

 [5]
 

 American Motorists vaguely asserts “[m]ere repairs or warranty work are insufficient to toll the 90 day notice period,” and contends “the warranty/repair versus contract work issue . . . raisfes] a triable issue of fact. . . .” It is the general rule “repairs” are not sufficient to toll the notice period.
 
 (United States
 
 v.
 
 Hesselden Construction Co.
 
 (10th Cir. 1968) 404 F.2d 774.) “[T]he ninety day notice requirement ... is designed to encourage the speedy resolution of disputes, to permit distribution of assets with a full knowledge of liability, and to provide both debtor and surety with an ultimate, secure repose. These ends would be largely thwarted were materialmen allowed to delay the final reckoning repeatedly by a series of minor adjustments to completed projects.”
 
 (Johnson Service Co.
 
 v.
 
 Transamerica Insurance Co.
 
 (5th Cir. 1973) 485 F.2d 164, 173.) However, there is “no contention that this work was a sham to extend the period of limitation”
 
 (Trinity Universal Ins. Co.
 
 v.
 
 Girdner
 
 (5th Cir. 1967) 379 F.2d 317, 318), nor is there any indication the necessity for a seal coat was created by Granite’s shabby or substandard work. Rather, the record indicates the seal coat was necessitated by Site Contractors’ faulty sub-base. This renders the application of the seal coat “well within the range of conduct that has been recognized in Miller Act decisions as extending the notice period.”
 
 (Johnson Service Co.
 
 v.
 
 Transamerica Insurance Co., supra,
 
 485 F.2d at p. 174.)
 

 [6]
 

 At the hearing on summary judgment, American Motorists’ counsel stated Longview paid Site Contractors, but Site Contractors failed to pay Granite. The record does not reflect when Longview made this payment. Granite filed a mechanics’ lien against Longview and Site Contractors on April 6, 1989. Mechanics’ liens are inapplicable to public works (Civ. Code, § 3109); the only remedies available on public works are stop notices (Civ. Code, §§ 3179-3214) and actions on public works payment bonds. (Civ. Code, §§ 3247-3252.) However, filing the lien provided Longview with actual notice of Granite’s claim approximately 75 days after the initial work was completed. There is a split of authority as to whether actual notice obviates the need to comply strictly with the statutory requirements. (Compare
 
 San Joaquin Blocklite, Inc.
 
 v.
 
 Willden
 
 (1986) 184 Cal.App.3d 361, 368 [228 Cal.Rptr. 842] [“the transmittal methods and notice requirements of section 3091 must be strictly construed”] with
 
 Fidelity Sound Systems, Inc.
 
 v.
 
 American Bonding Co.
 
 (1978) 85 Cal.App.3d Supp. 13, 21-22 [149 Cal.Rptr. 674] [substantial compliance sufficient because “purpose of the statute is to alert the general contractor (and his bonding company) that someone with whom the contractor had no direct relationship is asserting a claim . . . .”].) We need not reconcile these authorities; we merely note Longview took no precautions against double payment despite having actual knowledge of Granite’s claim.
 

 [7]
 

 The California courts have permitted subcontractors to recover attorney fees from the surety pursuant to the underlying contract “when the following elements are present: (a) a construction contract, (b) providing for attorney fees to the prevailing party, (c) supported by a surety bond issued by a third party, and (d) where the bond does not provide for liability for attorney fees. [Citation.]”
 
 (T&R Painting Construction, Inc.
 
 v.
 
 St. Paul Fire & Marine Ins. Co.
 
 (1994) 23 Cal.App.4th 738, 745-746 [29 Cal.Rptr.2d 199];
 
 Boliver
 
 v.
 
 Surety Co.
 
 (1977) 72 Cal.App.3d Supp. 22, 32 [140 Cal.Rptr. 259].) Here, however, the bond itself contains an attorney fees provision, and accordingly we limit our analysis to the bond’s provision.
 

 [8]
 

 In its reply brief, American Motorists raises a new issue, arguing the trial court permitted Granite to introduce additional declarations “three scant days before the hearing,” resulting in “a classic denial of procedural due process, having been ambushed by supporting declarations . . . .” American Motorists argues “the Judgment of the Court should be reversed for a basic denial of fairness and due process upon hearing of the motion for summary judgment.” However, the opening brief only mentions the objection to the additional declarations briefly in a footnote in the “Statement of Facts” section. “[P]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.” (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, p. 484, italics omitted; see also
 
 American Drug Stores, Inc.
 
 v.
 
 Stroh
 
 (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432].) American Motorists has provided no explanation for its failure to raise this issue in its
 
 *668
 
 opening brief, and we accordingly decline to address it. We deny Granite’s motion to strike the reply brief as unnecessary.
 

 [9]
 

 Government Code section 66499.2 provides, in pertinent part: “A bond or bonds by one or more duly authorized corporate sureties for the security of laborers and materialmen shall be in substantially the following form: . . . [¶] . . . Now, therefore, said principal and the undersigned as corporate surety, are held firmly bound unto the County of _ (or the City of _) and all contractors, subcontractors, laborers, materialmen and other persons employed in the performance of the aforesaid agreement and referred to in the aforesaid Code of Civil Procedure in the sum of _ dollars ($_), for materials furnished or labor thereon of any kind, or for amounts due under the Unemployment Insurance Act with respect to such work or labor, that said surety will pay the same in an amount not exceeding the amount hereinabove set forth, and also in case suit is brought upon this bond, will pay, in addition to the face amount thereof, costs and reasonable expenses and fees, including reasonable attorney’s fees, incurred by county (or city) in successfully enforcing such obligation, to be awarded and fixed by the court, and to be taxed as costs and to be included in the judgment therein rendered. [¶] It is hereby expressly stipulated and agreed that this bond shall inure to the benefit of any and all persons, companies and corporations entitled to file claims under Title 15 (commencing with Section 3082) of Part 4 of Division 3 of the Civil Code, so as to give a right of action to them or their assigns in any suit brought upon this bond. . . .”
 

 [10]
 

 Accordingly, we need not reach American Motorists’ challenge to Civil Code section 1717, as an alternative basis for upholding the attorney fees award.
 

 [11]
 

 Pursuant to Civil Code section 3123, subdivision (a), a mechanics’ lien “shall be for the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less.”
 

 [12]
 

 Civil Code section 3289, subdivision (b) provides: “If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.”